Marvin R. NORDLUND, d/b/a Rural Gas Service Company, Appellant,

v.

CONSOLIDATED ELECTRIC CO-OPERA-TIVE, a Corporation, Leo R. Hoer, Otis LeMasters, Orma E. Mackey, Frank P. Wilfley, Lester England, Stanley A. Oliver, Carroll Keithley, Stephen B. Owings, Thomas F. Callis, and Raymond D. Buresh, Respondents.

No. 44905.

Supreme Court of Missouri.

Division No. 1.

April 9, 1956.

Lon J. Levvis, Mexico, for appellant.

J. W. Buffington, Mexico, Gregory C. Stockard, Jefferson City, for respondents.

WESTHUES, Judge.

This is an action to recover damages for libel. Plaintiff asked $50,000 actual and $50,000 punitive damages. The trial court dismissed the petition on the ground that no cause of action was stated. From the judgment of dismissal, plaintiff appealed.

Plaintiff Marvin R. Nordlund, doing business as Rural Gas Service Company, was engaged in selling to people in the territory in and about Mexico, Missouri, and to dealers in nearby towns, liquefied petroleum gas in bulk as fuel for heating, cooking, and powering motors.

The defendant Consolidated Electric Co-operative is a corporation engaged in selling electric current and service to persons in Mexico, Missouri, and in a large number of towns in that territory. The individual defendants named in the petition are officers of the defendant corporation.

It was alleged in the petition that the chief product sold by plaintiff was liquefied

petroleum gas, commonly called or referred to as "LP gas" and was so known in trade journals throughout plaintiff's sales territory. It was further alleged that the defendants from time to time published and distributed trade papers or pamphlets under the name of "REA Electric Gleams" and that about April 15, 1954, a pamphlet was issued and distributed which contained the following which plaintiff says was libelous:

" 'L.P. Gas—Farm 4–F

" 'Cooking and heating water are two of the farm homemakers biggest problems. During the war time, many farm folks were started on LP gas. Now they find that there are four big stumbling blocks in its use.

" '1. Flame—The pilot light clogs or blows out. Electric stove and water heater units are enclosed in thick insulation. It's safe and quiet as your electric light.

" '2. Fumes—Leaving the burners on can mean a house filled with the vapors of LP gas. The gas is heavier than air and can drift down into the cellar until a pocket is formed big enough to be explosive.

" '3. Flues—The flue is the pipe that you have to install in your kitchen to carry off the vapors and heat of the LP gas. This is one less installation that you have to make with electricity.

" '4. Fire—Leakage of gas presents an important hazard. Insurance companies recognize the dangers and are charging higher rates for users of LP gas. LP gas people place fire hazards first on their list of things to look for in safety inspections.

" 'Electric Cooking and water heating is the only means that you can do these jobs the most economically, automatically, safely, have lower redecoration costs, along with all the other advantages electricity offers.

" 'Inquire about the Special Electric Rates for cooking and water heating.' "

Plaintiff alleged that the statement, "Now they (the "many farm folks" using LP gas) find that there are four big stumbling blocks in its use." is false; that the statement implies that those using LP gas were deceived by the seller of the gas; that the statement is unfair, vicious, malicious, and a libelous attack upon the plaintiff and his product. Plaintiff in his petition made similar charges as to the statement published in the pamphlet, "The pilot light clogs or blows out." Concerning the statement contained in paragraph 2 of the pamphlet, plaintiff said it was false and imputed to plaintiff the commission of a crime of furnishing gas not odorized as required by the regulations promulgated by authority of Chapter 323, RSMo 1949, V.A.M.S. Plaintiff further stated that the matters set forth in paragraph 4 were false and that all of the statements were made and published with intent to injure plaintiff in his business; that the publication of the statements was wantonly and maliciously made. Plaintiff made an allegation of general damages. Special damages were not stated.

Plaintiff in his brief says that the trial court erred in dismissing his petition; that a cause of action in libel was stated; that the motion to dismiss admitted the truth of all facts pleaded including the "meaning ascribed by the innuendo in this petition to the published words."

Defendants in their brief say that the vital question presented for our determination is whether the alleged libelous statements pleaded are what is known in law as libel per se or libel per quod. 53 C.J.S., Libel and Slander, § 8, pp. 41–45. Defendants say further that if the alleged libelous matter is libelous per se, then the petition states a cause of action. If, however, the statements constitute libel per quod, the petition does not state a cause of action for the reason that in such a case special damages must be pleaded and that special damages were not here pleaded. 53 C.J.S., Libel and Slander, § 162, pp. 247–253.

■ Section 559.410 RSMo 1949, V.A.M.S. defines libel. In Coots v. Payton, Mo., 280 S.W.2d 47, loc. cit. 53 (11, 12), this court en banc said, "any false, unprivileged, written communication which, reasonably construed, comes within the statutory definition is libelous per se." See also 53 C.J.S., Libel and Slander, § 223, p. 335; Hanson v. Bristow, 87 Kan. 72, 123 P. 725, loc. cit. 727; Diener v. Star-Chronicle Pub. Co., 230 Mo. 613, 132 S.W. 1143, loc. cit. 1146, 33 L.R.A.,N.S., 216; Hylsky v. Globe Democrat Pub. Co., 348 Mo. 83, 152 S.W.2d 119, loc. cit. 122(4) and 123(8–10); Grossman v. Globe-Democrat Pub. Co., 347 Mo. 869, 149 S.W.2d 362, loc. cit. 365(4–7); Jacobs v. Transcontinental & Western Air, 358 Mo. 674, 216 S.W.2d 523, 6 A.L.R.2d 1002.

The statements made, above set forth, which plaintiff claimed constituted libel, in our opinion do no more than point out alleged dangers inherent in the use of gas. The statements in no way accuse plaintiff of any wrongdoing, in fact, they do not even suggest negligence on his part. Erick Bowman Remedy Co., Inc., v. Jensen Salsbery Laboratories, Inc., 8 Cir., 17 F.2d 255, 52 A.L.R. 1187.

Plaintiff, in his reply brief, made the following statement which is appropriate to the case: "It is common knowledge that the handling, storage, and use of said gas can be highly dangerous if the handling and furnishing of it are not properly and competently done, just as the furnishing of electric current and the operation of a railroad can be highly dangerous."

The alleged libelous matter attempts to point out four alleged stumbling blocks in the use of gas: The first is that the pilot light clogs and blows out. That language cannot be construed as even suggesting that plaintiff in any way was responsible or that he had misled or misinformed any customer in that regard. The second is in regard to leaving the gas burners on and filling the house with vapors. It in no way imputed to plaintiff any wrongdoing. But, plaintiff says that it implies that the gas has not been properly odorized. We cannot so construe the language. The only effect of odorizing the gas is to make it so it can be detected. It in no way affects the propensities of the gas to explode and in no way prevents the gas from escaping if the burners are left open. Certainly, that language does not convey the idea that plaintiff was at fault. Electricity may cause fires in many ways: defective wiring, overloading of circuits, improper fuses, and in other ways. To point out these dangers could in no way be libelous of the dealer in electricity. The third point concerning flues and necessary pipe installation is not complained of by plaintiff. The fourth statement is that leakage of gas presents an important fire hazard. That language points out that that is a danger inherent in gas. The same may be said of electricity and coal, oil, or gasoline, or wood stoves. All are dangerous if not properly handled. To point out these dangers and that they have a bearing on fire insurance rates would certainly not be libelous.

In our opinion the alleged defamatory matter is nothing more than a criticism of plaintiff's product, pointing out certain dangers if it is not properly handled. The language used cannot be construed as implying any dishonesty on part of the plaintiff. In 53 C.J.S., Libel and Slander, § 11, pp. 52, 53, the rule is well stated. Note the following therefrom: "Defamatory words, in order to be actionable, must refer to some ascertained or ascertainable person, and that person must be plaintiff. If the words used really contain no reflection on any particular individual, no averment can make them defamatory."

■ We are not called upon to determine whether it is ethical for a business firm in its advertising of its product to point out specific stumbling blocks in the use of its competitor's goods. It may be a better practice to emphasize the good points of its own wares than to point out faults or defects in a competitor's goods. The question before us is whether plaintiff by his petition stated a cause of action for libel. We have demonstrated that the publication in question did not constitute libel per se and further that plaintiff did not

plead special damages. So, even if it were conceded for the sake of argument that the publication was libel per quod, no cause of action was stated.

The judgment of dismissal is affirmed.

All concur.