Joseph H. LANGWORTHY, Appellant,

v.

The PULITZER PUBLISHING COMPANY, a corporation, Respondent.

No. 49669.

Supreme Court of Missouri.

Division No. 2.

May 13, 1963.

Motion for Rehearing or for Transfer to Court En Banc Denied June 4, 1963.

Joseph Langworthy, Pacific, pro se.

Robert D. Evans, Robert B. Hoemeke, Green, Hennings, Henry, Evans & Arnold, St. Louis, for respondent.

STOCKARD, Commissioner.

Plaintiff has appealed from a judgment dismissing his petition for libel on the ground that it failed to state a claim upon which relief may be granted.

On May 11, 1956, defendant published the following article in its newspaper of general circulation:

" 'TOWHEAD PETE'S' GANG OF 5 BOYS, 4 GIRLS SEIZED.

" 'Towhead Pete' and his gang were rounded up today by county detectives at the personal direction of Superintendent of Police Albert E. DuBois, who found himself on a 'hot spot.'

"Joseph H. Langworthy, an attorney of 512 Ivy Avenue, Times Beach, reported someone had pushed open a window at his home and had taken three pieces of Swiss cheese, a piece of cake, some jello and $20. He wanted something done about it and told police so in emphatic terms.

"The gang of 'Towhead Pete' was rounded up. It consists of five boys— 12, 10, 6, 5 and 2 years old—and four girls, 13, 8, 6 and 4 years. They admitted getting into the house, but insisted they found only 28 cents and not $20.

"After a lecture at police headquarters, they were turned over to juvenile authorities for another lecture, that is, all except the 2-year-old, who was in diapers and police said they 'couldn't pin anything on him, anyway.' "

Plaintiff alleged in his petition that "said matter" was "false, malicious, and defamatory" to him and that it was published concerning him "with actual malice" and was an invasion of his right of privacy in that it was unwarranted by the incidents which actually occurred, that the public had no legitimate concern in the matter as published, and that the article was published without his consent or prior knowledge. He then alleged that "said matter" was false in that (a) there was no person involved either named or known as "Towhead Pete," "Pete" or "Peter;" (b) no child involved was as young as the age of four years or who was in diapers; and (c) there was no child involved about whom the police made the statements attributed to them. He then alleged that the "matter published" was a "false and unfair abridgement of what actually occurred" in that (a) the incidents which actually occurred and were reported by him to the police "included a long series of crimes" or "repeated acts of larceny, stealing, burglary, and vandalism," a number of the children involved were "delinquent children who needed help," and while repeated efforts to secure help had been made by him, the juvenile authorities took the position that the detection of one further crime would have to be made before they would proceed against the delinquent children; (b) the published article reported as a single incident a garbled version of two or more incidents but omitted some of the articles which were stolen, and also omitted the fact that the children which were involved broke into and entered the dwelling house of plaintiff by forcibly breaking an outer window with intent to commit a felony therein; and (c) the published article omitted the fact that most of the money stolen was that of plaintiff's 7-year-old daughter which she was proudly saving to buy a bicycle and that the loss was a strong emotional shock to her. Plaintiff then purported to plead innuendoes as follows: "Said matter" meant, was intended to mean, and was understood by those to whom published that (a) plaintiff had

falsely reported that more money was stolen than was actually taken and therefore was untruthful and for that reason not well-suited for his professional duties as an attorney; (b) plaintiff was "an inordinately selfish and egocentric person who greatly magnified and enlarged the importance of a trivial wrong committed against him by small children and demanded police action against the perpetrators of such wrong to an extent that he was ridiculous;" (c) plaintiff was "lacking in the good judgment, balance, and regard for others requisite to the proper performance of his professional duties as an attorney;" and (d) plaintiff "used undue and unwarranted pressure on public officials in a manner not befitting an attorney in the sense that he demanded police action beyond the point of good judgment and to the extent that he was ridiculous." In conclusion plaintiff alleged that the publication caused him "great humiliation, mortification, shame, embarrassment, and mental suffering," and that "said matter" was a "malicious defamation" of him in that it tended to provoke him to wrath and expose him to public hatred, contempt and ridicule and deprive him of the benefits of public confidence and social intercourse and intended to injure and did injure him as a member of his profession. He prayed for $10,000 actual and $10,000 punitive damages.

In view of plaintiff's attempt to plead several innuendoes we should set forth certain basic rules pertaining to the law of libel and thereby define and delineate the precise issues for determination.

█ Words which are defamatory per se, that is, defamatory on their face without the aid of extrinsic proof, are actionable and the allegation in the petition of extrinsic facts in the form of what is referred to as the inducement and innuendo is not required in order to state a cause of action. 53 C.J.S. Libel and Slander §§ 8 and 162; Chambers v. National Battery Co., 34 F.Supp. 834. In such event the law presumes damages which may be alleged generally, 53 C.J.S. Libel and Slander §§ 170b and 262; Eby v. Wilson, 315 Mo. 1214, 289 S.W. 639, 50 A.L.R. 268, and special damages need not be alleged although proof of actual damage may be made to support the presumption of injury and to show its extent. 53 C.J.S. Libel and Slander §§ 264 and 265. A petition based on published words not defamatory per se may state a cause of action for what is referred to as libel per quod. See Nordlund v. Consolidated Electric Co-operative, Mo., 289 S.W.2d 93, 57 A.L.R.2d 832; 53 C.J.S. Libel and Slander § 8, pp. 43–44. However, the petition must allege extrinsic facts which show that although the words published were not libel per se they were in fact defamatory, and it is the uniform rule in Missouri and elsewhere that in such situation special damages must be pleaded in order for the petition to state a cause of action. Nordlund v. Consolidated Electric Cooperative, supra; Eby v. Wilson, supra; Furlong v. German-American Press Ass'n, Mo., 189 S.W. 385; Mitchell v. Bradstreet Co., 116 Mo. 226, 22 S.W. 358, 724, 20 L.R.A. 138; Curry v. Collins, 37 Mo. 324; National Refining Co. v. Benzo Gas Motor Fuel Co., 8 Cir., 20 F.2d 763; McBride v. Crowell-Collier Pub. Co., 5 Cir., 196 F.2d 187; Chambers v. National Battery Co., 8 Cir., 34 F.Supp. 834; Cal-Therm Industries, Inc. v. Dun & Bradstreet, Inc., D.C., 75 F.Supp. 541; Landstrom v. Thorpe, 189 F.2d 46, 26 A.L.R. 2d 1170, certiorari denied, 342 U.S. 819, 72 S.Ct. 37, 96 L.Ed. 620; Muchnick v. Post Publishing Co., 332 Mass. 304, 125 N.E.2d 137, 51 A.L.R.2d 547; 33 Am.Jur., Libel and Slander § 243; 53 C.J.S. Libel and Slander § 170a.

█ Plaintiff has pleaded no special damages in this case. Therefore, for the petition to state a cause of action the published words must constitute libel per se. "In determining whether language is libelous per se, it must be viewed stripped of any pleaded innuendo. The meaning of the phrase 'per se' is 'taken alone, in itself, by itself.' Words which are libelous per se do not need an innuendo, and, conversely,

words which need an innuendo are not libelous per se." Shaw Cleaners & Dyers, Inc. v. Des Moines Dress Club, 215 Iowa 1130, 245 N.W. 231, 86 A.L.R. 839. The motion to dismiss the petition for failure to state a claim upon which relief may be granted does not admit the construction of the words pleaded in an innuendo, Fritschle v. Kettle River Co., 346 Mo. 196, 139 S.W.2d 948; Hylsky v. Globe Democrat Pub. Co., 348 Mo. 83, 152 S.W.2d 119, and whether the alleged libelous words, when given their natural meaning, Bernhardt v. Armbruster, Mo.App., 217 S.W.2d 759; Lightfoot v. Jennings, 363 Mo. 878, 254 S.W.2d 596, are "capable of the defamatory meaning ascribed to them" is a question of law for the court to decide on a motion to dismiss. Cook v. Pulitzer Pub. Co., 241 Mo. 326, 145 S.W. 480, 485.

Section 559.410, RSMo 1959, V.A.M.S., defines libel as follows: "A libel is the malicious defamation of a person made public by any printing, writing, sign, picture, representation or effigy tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse, * * *." The Missouri courts, as is set out in Coots v. Payton, 365 Mo. 180, 280 S.W.2d 47, have uniformly held that the published writing must itself amount to a "defamation," and that if in addition (and only if) it also exposes one to hatred or contempt, etc., it is libelous. It was held in Diener v. Star-Chronicle Pub. Co., 232 Mo. 416, 135 S.W. 6, 11, that "There must be *defamation* in a libelous sense before there can be a libel. * * * To make a libel there must be defamation in the sense of the law, before the public scorn and contempt feature is operative. Defamation includes the idea of calumny, aspersion by lying; the injury of another's reputation in that way. To defame is to speak evil of one maliciously, to dishonor, to render infamous." What is there defamatory about plaintiff in the published article? We can find nothing.

The most that can be said is that in some small way it may have subjected plaintiff to ridicule. However, "a communication is not defamatory solely because it may expose one to ridicule in the sense, at least, that it exposes him to jests or injured personal feelings. And, however difficult it may be to formulate a definition of 'defamatory' which may be applied in determining whether particular words constitute a 'defamation' we need go no further * * * than to reach the conclusion that words do not constitute a 'defamation' solely because they subject one to ridicule." Coots v. Payton, supra, 280 S.W.2d at p. 54. No reasonable construction of the published words in this case could result in them being defamatory of plaintiff. For that reason the publication of them did not and could not be found to constitute libel per se, and the petition does not state a cause of action for libel.

Plaintiff next asserts that his petition, although in one count only, also states a claim for invasion of privacy. He cites several cases including Barber v. Time, Inc., 348 Mo. 1199, 159 S.W.2d 291. In that case this court recognized that such a cause of action exists in this state and it stated that "establishing conditions of liability for invasion of the right of privacy is a matter of harmonizing individual rights with community and social interests." It was then held: "The determination of what is a matter of public concern is similar in principle to qualified privilege in libel. It is for the court to say first whether the occasion or incident is one of proper public interest. * * * If the court decides that the matter is outside the scope of proper public interest and that there is substantial evidence tending to show a serious, unreasonable, unwarranted and offensive interference with another's private affairs, then the case is one to be submitted to the jury." Plaintiff alleged that he did report to the police that a number of children had broken into his house and committed a theft. That report and the resulting action of the police was properly a matter of public interest

and defendant could comment thereon in its newspaper. The fact that plaintiff may think the comment was not as complete or accurate as he would have preferred it to be does not result in the publication constituting an invasion of his privacy when it did not constitute "a serious, unreasonable, unwarranted and offensive interference" with his *private* affairs. No action for damages lies against a newspaper for merely inaccurate reporting when the publication does not constitute libel. See 66 C.J.S. Newspapers § 21. In addition, the right of privacy is not an absolute right, and it protects only the ordinary sensibilities of an individual and not supersensitiveness. *77* C.J.S. Right of Privacy § 2. Admittedly it is difficult to define precisely the limits of what is and is not an actionable invasion of privacy, but some factual situations so clearly and unquestionably do not result in an invasion of privacy that the courts should so declare as a matter of law. We have no hesitancy whatever in ruling that the subject of the publication in this case was a matter of public concern, and even if the published report was incomplete and in the asserted respects inaccurate it did not constitute an actionable invasion of the privacy of plaintiff.

Plaintiff also asserts that his petition should be construed to state a cause of action for emotional suffering. "The rule is well established that, in the absence of evidence of an unlawful invasion of one's rights under circumstances of malice, wilfulness, wantonness, or inhumanity, there is no recovery for fright, terror, anxiety, mental distress, or nervousness, unless these are accompanied by some physical injury." Gambill v. White, Mo., 303 S.W.2d 41, and see the numerous cases there cited. This rule applies equally as well to a claim for damages for emotional suffering when there is no actionable invasion of plaintiff's rights. We need not indicate whether emotional suffering would be an element of damages in an action for libel or invasion of privacy. It is sufficient to rule, which we do, that it alone does not give rise to a separate cause of action.

The petition was properly dismissed, and the judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.