**Melba BROWN, Appellant,**

v.

**Bob KITTERMAN, Respondent.**

**No. 53610.**

Supreme Court of Missouri,
Division No. 2.

July 14, 1969.

App., 363 S.W.2d 33; Walsh v. Southwestern Bell Tel. Co., 331 Mo. 118, 52 S.W.2d 839; McGinley v. McGinley, Mo. App., 170 S.W.2d 938.

Robert B. Baker, Ellington, for appellant.

John W. Belew, Doniphan, Moore & Brill, Richard D. Moore, Newton C. Brill, West Plains, for respondent.

STOCKARD, Commissioner.

By Count I of her petition plaintiff sought actual and punitive damages for libel, and by Counts II, III and IV she sought actual and punitive damages for slander. The trial court dismissed the petition for failure to state a claim upon which relief could be granted, and plaintiff has appealed. We affirm.

Defendant's motion to dismiss the appeal for the reason that plaintiff's brief failed to comply with Civil Rule 83.05, V.A.M.R., while not totally without merit, is overruled.

Plaintiff alleged she was libeled by the publication by defendant of a letter, which in its entirety was as follows:

"Grandin, Mo.,
Mar. 6, 1966.

"University of Missouri Extension Service
"Van Buren, Missouri
"Gentlemen:

Re: Community Center Survey Grandin, Mo.

"Since I did not have time to answer the survey in the short length of time given I am taking this means to give my objections and suggestions. Since the community center building was rented without the approval of a majority of the original building committee and it is now being managed by the owner of the building, I don't think the owner of the property should also be the manager.

"Several things have been happening in the Grandin Community during the past few months which doesn't look good, some of it is directly from the center and some isn't.

"One of the VISTA workers proposes that we should legalize prostitution in a high school class at Ellisnore, the same worker has had considerable to do with the setting up and management of the center. We have had two school girls reported to be pregnant another has been forceable assaulted. On two different occasions we have heard from our home girls hollow out and a car door slam, the car takes off then all is quiet. To me this all adds up to social problems that are not being solved. I do not think the center should be operated in the manner it is in the name of the community. If the owner wants to operate such a place of business then let it be under some other name than the community.

"If the center is to be such a good and desirable organization then I make the following suggestions to insure its future well being.

"Why not let each official church board appoint one of its members to serve on a committee, this would give the center a

governing board of 5, then let this committee have the rights to appoint and supervise the management. If all 5 churches would cooperate in this manner, I think the center would have a much better atmosphere.

"To sum up my thinking, I do not think we need the center in Grandin, if it is to be operated as is. Unless some very good improvements can be made the Federal Government should not put its money in it. We have to [sic] many other more important things the Government can help us with, other than spending money on undesirable activities.

"I certainly hope some good can come from this survey.
Respectfully yours,
/s/ Bob Kitterman
Mayor City of Grandin."

In view of plaintiff's attempt to plead innuendoes we shall set forth certain basic rules pertaining to the law of libel and thereby define and delineate the precise issue for determination.

■ Published words in a written communication which are defamatory within the meaning of Section 559.410, RS Mo 1959, V.A.M.S., without the aid of extrinsic facts, referred to as libelous per se, are actionable. Langworthy v. Pulitzer Publishing Company, Mo., 368 S.W.2d 385; Chambers v. National Battery Co., D.C., 34 F.Supp. 834; 53 C.J.S. Libel and Slander §§ 8 and 162. In such a situation the law presumes some damages which may be alleged generally, Eby v. Wilson, 315 Mo. 1214, 289 S.W. 639, 50 A.L.R. 268, and the allegation of special damages is not required although proof of actual damage may be made to support the presumption of injury and to show its extent. Langworthy v. Pulitzer Publishing Company, supra, 368 S.W.2d at p. 388. A petition based on published words not defamatory per se may state a cause of action for libel, but to do so the petition must allege facts extrinsic to the published matter, referred to as the inducement, and the explanation referred to as the innuendo, which establishes the defamatory sense within the meaning of Section 559.410, supra. In addition, it has been the uniform rule in this state, and the majority rule elsewhere, that in such situation special damages must be pleaded in order for the petition to state a cause of action. Hellesen v. Knaus Truck Lines, Mo., 370 S.W.2d 341; Langworthy v. Pulitzer Publishing Company, supra, 368 S.W.2d at p. 388. See also the numerous cases cited in the Langworthy case. Plaintiff challenges this rule, but if the publication in this case constitutes libel per se there would be no need to discuss this challenge. We shall first determine whether the publication constitutes libel per se.

Section 559.410, supra, defines libel as follows: "A libel is the malicious defamation of a person made public by any printing, writing, sign, picture, representation or effigy tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse, * * *." The courts, as set out in Coots v. Payton, 365 Mo. 180, 280 S.W. 2d 47, have uniformly held that to constitute libel per se the published writing must itself amount to a "defamation," and that in addition it must expose one to hatred or contempt, etc. It was held in Diener v. Star-Chronicle Pub. Co., 232 Mo. 416, 135 S.W. 6, 11, that "There must be *defamation* in a libelous sense before there can be a libel. * * * To make a libel there must be defamation in the sense of the law, before the public scorn and contempt feature is operative. Defamation includes the idea of calumny, aspersion by lying; the injury of another's reputation in that way. To defame is to speak evil of one maliciously, to dishonor, to render infamous."

■ The motion to dismiss the petition for failure to state a claim upon which relief may be granted does not admit the construction of the words pleaded in an innuendo, Fritschle v. Kettle River Co.,

346 Mo. 196, 139 S.W.2d 948; Langworthy v. Pulitzer Publishing Company, Mo., supra, and whether the alleged libelous words, when given their natural meaning, Lightfoot v. Jennings, 363 Mo. 878, 254 S.W.2d 596, are "capable of the defamatory meaning ascribed to them" is a question of law for the court to decide on a motion to dismiss. Cook v. Pulitzer Pub. Co., 241 Mo. 326, 145 S.W. 480, 485.

Plaintiff extracts seven portions or phrases from the above publication which she alleges were false, and in her petition she ascribes to each of them by way of innuendo a meaning. Although in our determination of whether any of the seven excerpts constitute libel per se, we are not bound by the meaning ascribed to them by plaintiff, we will set forth the various excerpts and the pleaded meanings.

[1] "The community center building was rented without the approval of a majority of the original building committee and it is now being managed by the owner of the building,

"Meaning that Melba Brown, plaintiff, was the owner and manager of the center."

[2] "Several things have been happening in the Grandin community during the past few months which doesn't look good, some of it is directly from the center and some isn't."

"Meaning that some things which do not look good were being encouraged by the community center managed by Melba Brown, plaintiff."

[3] "One of the VISTA workers proposed that we should legalize prostitution in a high school class in Ellsinore, the same worker has had considerable to do with the setting up and management of the center. We have had two school girls reported to be pregnant, another has been forceable assaulted. On two different occasions we have heard from our homes girls hollow out

and a car door slam, the car takes off then all is quiet. To me this all adds up to social problems that are not being solved."

"Meaning that the above class and character of activities are being promoted and encouraged at the Community Center by Melba Brown, plaintiff."

[4] "I do not think the center should be operated in the manner it is in the name of the community. If the owner wants to operate such a place of business then let it be under some other name than the community."

"Meaning that Melba Brown, plaintiff, is operating the community center in such a manner as to encourage illicit sexual relations by persons who come there."

[5] "If the center is to be such a good and desirable organization then I make the following suggestions to insure its future well being."

"Meaning that the community center operated by Melba Brown, plaintiff, is an undesirable organization because of the promotion and encouragement of the above stated activities."

[6] "I think the center would have a much better atmosphere."

"Meaning that the community center now has an immoral atmosphere because of the promotion of the above immoral activities."

[7] "To sum up my thinking. I do not think we need the center in Grandin, if it is to be operated as is. Unless some very good improvements can be made the Federal Government should not put its money in it. We have to [sic] many other more important things the Government can help us with, other than spending money on undesirable activities."

"Meaning that Melba Brown, plaintiff, is operating the community center

in such a way as to promote and encourage immoral activities and that the Federal Government is spending money for this purpose."

Plaintiff alleged that the letter was published of and concerning her, and by reason of Civil Rule 55.22, V.A.M.R., this was sufficient for what is referred to as the "colloquium." It is not clear, but when the entire petition is considered it appears, and we shall assume, that plaintiff owned the building which was rented for use as a community center, and that she was the manager of the community center. However, plaintiff alleged that the words which had that meaning were false. There was no allegation of special damages.

■ When we consider the language of the letter in its entirety, and give the words their plain and ordinarily understood meaning, what is there in the various portions relied on in the petition which are defamatory of plaintiff? We can find nothing.

In the first excerpt set out by plaintiff it was stated that the community center building was rented without approval of "the original building committee" (presumably a committee representing the community center) and that "it" (the building or the community center) is now being managed by the owner of the building, which we assume was plaintiff. However difficult it may be to formulate a definition of "defamatory" which may be applied in determining whether particular words constitute a "defamation," Coots v. Payton, 365 Mo. 180, 280 S.W.2d 47, 54, when we assume factual matters most favorable to plaintiff we find nothing defamatory of plaintiff in these words. If we should accept the meaning ascribed to the words by plaintiff there is nothing defamatory within the definition of Section 559.410, supra. The same is true as to the second excerpt.

The third excerpt contains statements concerning "one of the VISTA workers," "school girls" and "social problems that are not being solved." Plaintiff does not allege that she was the "VISTA worker" or one of the "school girls." Plaintiff's position seems to be the statement was defamatory of her because the meaning of the words was that she "promoted and encouraged" the activities referred to. The statement does not say that, and it is only by extrinsic facts that such a meaning could be brought about. However, plaintiff does not allege any extrinsic facts, except possibly that she was the manager of the community center. Instead she simply sets forth, presumably by way of an innuendo, a claimed meaning of the words, not supported by the words themselves, and not supported by extrinsic facts. We find nothing defamatory in the words constituting the third excerpt. The fourth, fifth, sixth and seventh excerpts, when the words are considered alone, are totally devoid of anything defamatory of plaintiff.

■ As noted, plaintiff does not allege special damages, and for this reason under the applicable present rule the petition could not state a claim for libel per quod. However, plaintiff argues that Nordlund v. Consolidated Electric Co-operative, Mo., 289 S.W.2d 93, 57 A.L.R.2d 832; Langworthy v. Pulitzer Publishing Co., Mo., 368 S.W.2d 385; Otto v. Kansas City Star Company, Mo., 368 S.W.2d 494; Hellesen v. Knaus Truck Lines, Mo., 370 S.W.2d 341, and other cases should no longer be followed insofar as they express the rule that special damages must be alleged in order to state a claim for libel when the published words do not constitute libel per se. She cites several cases from other states, including Pitts v. Spokane Chronicle Company, 63 Wash.2d 763, 388 P.2d 976, 9 A.L.R.3d 550; Herrmann v. Newark Morning Ledger Co., 48 N.J.Super. 420, 138 A.2d 61. She also cites articles in various law reviews, Prosser on Torts, and Harper & James, Torts. Although published words not libelous per se may be actionable (as libel per quod) when, by what is known as the inducement, extrinsic facts are pleaded which result

in words, nondefamatory on their face, having a defamatory meaning as shown by the pleaded innuendo, we doubt that the petition states a claim for libel per quod. We need not, however, expressly so rule because we are not persuaded that the rule followed in Missouri concerning the need to allege special damages in order to state a claim for libel per quod should be changed. Although Professor Prosser apparently has some question as to which rule should be followed, he agrees that the rule urged by plaintiff is applied only in "a small minority of the American jurisdictions," and that the rule followed in Missouri is of the "great majority." Prosser on Torts, 3d Ed., § 107, pp. 781, 782. See also Prosser, Libel Per Quod, 46 Va. L.Rev. 839. The rule requiring the allegation of special damages to state a claim for libel per quod has been characterized as "the modern American trend," 28 Mo.L. Rev. 661, and that it "seems to be generally agreed that a complaint [for libel per quod] which fails properly to allege [special damages] is defective." 33 Am.Jur., Libel and Slander § 243, p. 223. See also 53 C.J.S. Libel and Slander § 170, p. 271. In a revealing article by Professor Prosser, More Libel Per Quod, 79 Har.L.Rev. 1629, the author points out that he has found only one case, Sydney v. McFadden Newspaper Pub. Corp., 242 N.Y. 208, 151 N.E. 209, 44 A.L.R. 1419, where a court has expressly and necessarily ruled that the allegation of special damages is not an element of libel per quod, and that case is no longer followed by the New York courts. See Everett v. Gross, 22 A.D.2d 257, 254 N.Y.S.2d 561; O'Connell v. Press Publishing Co., 214 N.Y. 352, 108 N.E. 556; Kuhn v. Veloz, 252 App.Div. 515, 299 N.Y.S. 924; Solotaire v. Cowles Magazines, Inc., Sup., 107 N.Y.S.2d 798; Macri v. Mayer, 22 Misc.2d 429, 201 N.Y.S.2d 525. Mr. Prosser admits that language in Herrmann v. Newark Morning Ledger Co., 48 N.J.Super. 420, 138 A.2d 61; Martin v. Outboard Marine Corporation, 15 Wis. 2d 452, 113 N.W.2d 135; and Pitts v. Spokane Chronicle Company, 63 Wash.2d 763, 388 P.2d 976, 9 A.L.R.3d 550, indicate that the allegation of special damages is not a requisite for libel per quod, but he asserts that in those cases the publication was actionable without the allegation of intrinsic facts so the statements were unnecessary to the result reached and were contrary to the majority rule. In the above article it is pointed out that in those states where the issue has been squarely presented, other than in the one New York case, the ruling has been that the allegation of special damages is essential to the statement of a claim for libel per quod. See Ilitzky v. Goodman, 57 Ariz. 216, 112 P.2d 860; McBride v. Crowell-Collier Pub. Co., 5 Cir., 196 F.2d 187 (applying Florida law); Karrigan v. Valentine, 184 Kan. 783, 339 P.2d 52; Axton Fisher Tobacco Co. v. Evening Post Co., 169 Ky. 64, 183 S.W. 269, L.R.A. 1916E, 667; Campbell v. Post Pub. Co., 94 Mont. 12, 20 P.2d 1063; Chase v. New Mexico Pub. Co., 53 N.M. 145, 203 P.2d 594; Flake v. Greensboro News Co., 212 N.C. 780, 195 S.E. 55; Ellsworth v. Martindale-Hubble Law Directory, 66 N.D. 578, 268 N.W. 400; Moore v. P. W. Publishing Co., 3 Ohio St.2d 183, 209 N.E.2d 412; Hargrove v. Oklahoma Press Pub. Co., 130 Okl. 76, 265 P. 635; Fite v. Oklahoma Pub. Co., 146 Okl. 150, 293 P. 1073; Fry v. McCord, 95 Tenn. 678, 33 S.W. 568; Electric Furnace Corp. v. Deering Milliken Research Corp., 6 Cir., 325 F.2d 761 (applying Tennessee law); Yelle v. Cowles Publishing Co., 46 Wash. 2d 105, 278 P.2d 671, 53 A.L.R.2d 1. See also the cases cited in the footnotes to 53 C.J.S. Libel and Slander § 170(c). There may be some question concerning the historical development of the rule (see Henn, Libel-By-Extrinsic-Fact, 47 Cornell L. Quart. p. 14), but after careful consideration of the articles and cases relied on by plaintiff and those cited above, we conclude that the requirement that special damages must be alleged when the published words are not libelous per se is sound. When the published words do not constitute libel per se the law does

not presume that at least some damage resulted, but "special damages constitute the sole basis for a recovery." 33 Am. Jur., Libel and Slander § 243, p. 223. If a plaintiff must plead extrinsic facts to show he has been libeled, he should also plead facts to show his damage.

We turn now to the counts in the petition pertaining to slander.

In Counts II, III and IV plaintiff alleged that in the presence of others, defendant "willfully, wantonly and maliciously spoke of and concerning the plaintiff certain false, defamatory and slanderous words" as follows: Count II, "That Melba Brown was running the community center as a 'pick up joint;'" Count III, "All they do is come in here and hold hands and make love;" Count IV, "The government was paying the rent on the community center building. Melba Brown was receiving $200.00 per month for operating the community center, and that she was lying to the public about the source of funds to operate the community center when she said they were voluntary contributions." By attempted innuendoes plaintiff alleged that the oral statements of defendant set forth in Counts II and III respectively meant that plaintiff "was operating the community center in such a way as to encourage prostitution and other forms of illicit sexual activity," and that plaintiff "was managing the community center in such a way as to encourage and promote immoral activities." No intrinsic facts were alleged in any of the counts, and no innuendo was alleged in Count IV. Only general damages were pleaded.

■ "The reluctance with which the common law courts at first received the action of slander, and their fear of invading the province of ecclesiastical law, led them to hold that the action would not lie without proof of 'temporal' damage. From this there developed the rule that slander, in general, is not actionable unless actual damage is proved. To this the courts very early established certain specific exceptions: the imputation of crime [in Missouri, the crime must be punishable by imprisonment, Kirk v. Ebenhoch, 354 Mo. 762, 191 S.W.2d 643], of a loathsome disease, and those affecting the plaintiff in his business, trade, profession, office or calling—which required no proof of damage. * * * Modern statutes and decisions have added a fourth category, the imputation of unchastity to a woman. For these four kinds of slander, no proof of any actual harm to reputation or any other damage is required for the recovery of either nominal or substantial damages." Prosser on Torts, 3d Ed. § 107, p. 772. This expresses the general rule in Missouri. Kirk v. Ebenhoch, supra; Boyce v. Wheeler, 197 Mo.App. 295, 195 S.W. 84; Tincher v. National Life & Accident Ins. Co., 235 Mo.App. 663, 146 S.W.2d 663. Since special damages were not alleged in Counts II, III or IV, we need only determine whether the alleged slanderous words fall within any of the above four categories, or as frequently said, whether they constitute slander per se.

■ Obviously, the alleged slanderous words do not impute to plaintiff the commission of a crime punishable by imprisonment even if we adopt the alleged meaning, which we think is not justified, that plaintiff was operating the community center in such a way to encourage prostitution. See Section 563.630, RSMo 1959, V.A.M.S., and Kirk v. Ebenhoch, supra. Neither do the words impute to plaintiff a loathsome disease or unchastity. In one of the statements alleged to have been said by defendant, plaintiff was accused of lying to the public when she said the funds to operate the community center were received from voluntary contributions. However, "Oral imputations of falsehood generally are not actionable per se, and may be actionable only where they occasion special damages." 53 C.J.S. Libel and Slander § 19, p. 66. See also McDaniel v. Jordan, 164 Ark. 455, 262 S.W. 30; Wooten v. Martin, 140 Ky. 781, 131

S.W. 783, Ann.Cas. 1912B 407; Floraday v. Monometer Gauge & Equipment Corporation, 50 Ohio App. 397, 198 N.E. 488; Barnes v. Trundy, 31 Me. 321; Townshend on Slander, 4th ed., § 174, p. 197. In Bruno v. Schukart, 12 Misc.2d 383, 177 N.Y.S.2d 51, the term "liar" was held not to constitute slander per se in the absence of some showing that it would affect plaintiff's business.

Plaintiff's argument in her brief is directed primarily to the contention that the words set forth in Counts II, III and IV constituted a defamation affecting her in her business, trade or employment. However, at no place in any of the counts pertaining to slander, or in Count I pertaining to libel, does she allege that she was engaged in any business, trade or employment, or that the alleged defamatory words affected or tended to prejudice her in her business, trade or employment. In each count she merely alleges that the words were false and were said of her, and that she was "injured in her good name and fame" or "reputation."

As a general rule, false words which tend to prejudice the person spoken of in his business, profession, office, occupation, or employment, are actionable without proof of special damages if they affect him in such calling in a manner that may, as a necessary consequence, or does, as a natural consequence, prevent him from deriving therefrom that pecuniary reward which, probably he might have obtained. 33 Am.Jur., Libel and Slander § 63. The words must impute "a want of knowledge, skill, capacity, or fitness to perform or discharge the duties" of a profession, trade, business or employment, Heitzeberg v. Von Hoffman Press, 340 Mo. 265, 100 S.W.2d 307, or, stated another way, to be actionable per se the words must be defamatory of the plaintiff in such calling in that they impute fraud, want of integrity or misconduct in the line of his calling. McKim v. Moore, 291 Mo. 697, 237 S.W. 773; Stowers v. Western Bentley Mercantile Co., Mo.App., 140 S.W.

2d 714. Where the words complained of show on their face that they were published of plaintiff with respect to his profession, business, or employment and contain matter injurious to him in such capacity, no averment that the words were so published is necessary. 53 C.J.S. Libel and Slander § 164(b) (2), p. 258. However, when words are not obviously defamatory (whether of plaintiff personally or of plaintiff in his business or calling) the plaintiff must allege facts from which it can be found that the words were used in a defamatory sense. Bernhardt v. Armbruster, Mo.App., 217 S.W.2d 759. In other words, when plaintiff's contention is that the published words were defamatory of him in his business or calling, such defamatory meaning must appear from the words or it is "necessary to allege that plaintiff was engaged in such profession, business or employment at the time of the publication and that the charge was published of plaintiff with respect thereto." 53 C.J.S. Libel & Slander § 164(b) (2), p. 258; Stowers v. Western Bentley Mercantile Co., Mo.App., 140 S.W.2d 714. We shall examine the alleged defamatory words in the light of these principles.

To say of plaintiff that she operated the community center, with no allegation as to what it is or its purposes, as a "pick-up joint," that persons go there to "hold hands and make love," that the government was paying the rent on the community center, and that plaintiff was receiving $200 a month to operate it cannot be slanderous per se. They are not defamatory of plaintiff personally. The term "pick-up joint" and the reference to persons who go to the center and "hold hands and make love" are capable of perfectly innocuous meanings. They do not impute to plaintiff a want of knowledge, skill, capacity or fitness to perform or discharge her duties. They cannot be defamatory in that respect without the allegation of extrinsic facts to demonstrate such defamatory character, and no extrinsic facts were alleged. The only other

charge is that plaintiff "was lying to the public about the source of funds to operate the community center when she said they were voluntary contributions." As noted above, an oral charge of lying or of untruthfulness is not slander per se of an individual, but it might be actionable per se in some circumstances if the words tend to prejudice the person spoken of in his business or calling. Plaintiff does not allege what her business or calling was. We have assumed it was manager of a community center, whatever that is. Neither does plaintiff allege that the charge of lying was published of her with respect to her business or calling, and whatever her duties and responsibilities were as such manager, a charge that she misrepresented the source of the funds for the operation of the center, as distinguished from a charge, for example, that she violated her duties as manager or that in the management of the center she appropriated funds for an unauthorized purpose, does not demonstrate on its face that plaintiff was defamed in her business as manager of the community center by imputing to her fraud, want of integrity, or misconduct in her duties as manager. For a somewhat comparable case, see Dunnebacke v. Williams, 214 Tenn. 581, 381 S.W.2d 909. Perhaps extrinsic facts would demonstrate this, but without them the words cannot be construed to be defamatory of plaintiff personally or of her in her business or calling.

We mention one further matter lest it might be assumed the issue had been overlooked. We have assumed plaintiff was manager of the community center. If we had not, the alleged oral statements could not in any event have been found to have prejudicially affected plaintiff in her employment or calling. But, when we make that assumption, plaintiff then apparently becomes a public official within the meaning of New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412, or at least a person comparable to the manager of a county operated recreation area who was the plaintiff in Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed. 2d 597. There are no facts alleged in the petition from which it could be found that the alleged falsehoods were published with malice, that is, with knowledge of their falsity or with reckless disregard of whether they were true or false. In view of our conclusion that the petition does not allege libel or slander per se, further development of the rule announced in the New York Times case, and the cases following it, is unnecessary.

The judgment is affirmed.

BARRETT, C., concurs.

PRITCHARD, C., not sitting.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.