**Robert L. CAPOBIANCO, Plaintiff–Appellant,**

v.

**PULITZER PUBLISHING COMPANY, et al., Defendant–Respondent.**

No. 58430.

Missouri Court of Appeals, Eastern District, Division Four.

June 11, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 23, 1991.

Application to Transfer Denied Sept. 10, 1991.

---

James J. Sauter, Mary E. Dorsey, St. Louis, for plaintiff-appellant.

Robert B. Hoemeke, Eric Paulsrud, St. Louis, for defendant-respondent.

SATZ, Judge.

This is an action for defamation and intentional interference with a business expectancy. In three of the four counts in his petition, plaintiff, Robert Capobianco, alleges he was libeled in newspaper articles by defendant, Pulitzer Publishing Company, the publisher of the articles, and Michael Sorkin and Catherine Vespereny, the authors of the articles. In his fourth count, plaintiff alleges the defendants interfered with a business expectancy of his. The trial court granted defendants' motion to dismiss the libel counts and granted them a summary judgment on plaintiff's interference count.

Plaintiff appeals. We affirm.

The law of libel and slander protects a person's reputation. For that primary reason and others, libel and slander are often referred to as the "twin torts of defamation." *See* Prosser and Keeton, *The Law of Torts,* § 111 at 771 (5th ed.1984). However, at early common law, their differences were as significant as their similarities. These differences appeared in both the substantive and procedural principles governing them.

For a defendant's words to be defamatory, they obviously must convey a defamatory meaning. They may do so on their face: "you are a thief;" or, they may be shown to do so by additional extrinsic evidence: "he burned his barn," which he, as the owner, has a right to do, plus the additional evidence that his barn was insured. *Id.* at 782.

Where words are not defamatory on their face, the plaintiff must plead and prove what extrinsic evidence is needed to give the words defamatory meaning: the "inducement," the extrinsic facts which create the defamatory meaning; the "innuendo," why those words create that meaning; and the "colloquium," how the defamatory meaning attaches to the plaintiff, if the words do not facially refer to him or her. *Id.* at 782–783.

At early common law, any libelous statement, a written defamation, was conclusively presumed to result in damages, whether or not it was libelous on its face. *Id.,* § 112 at 795. Libel was "actionable per se", meaning it was actionable without the plaintiff needing to plead and prove he had suffered any impairment of his reputation or other harm. *Id.*

Not so with slander, a spoken defamation. Not all slanderous statements were presumed to cause damages; only some were. Like libel, slanderous words could be defamatory on their face or shown to be defamatory by extrinsic evidence. But, only certain categories of slander were "actionable per se", i.e. presumed to cause damages and, thus, actionable without pleading special damages. *Id.* at 788–795. Special damages were not required if the words (1) charged certain crimes; (2) charged certain diseases; (3) tended to harm a person in his or her business, trade, profession or office; or (4) charged a woman with unchastity. This type of slander was labelled "slander per se." All other slanderous statements needed special damages to be actionable and, apparently, were labelled "slander per quod." Elredge, *The Spurious Rule of Libel Per Quod*, 79 Harvard L.R. 733, 736 (1966).

Long ago, in Missouri, we began to use most of this terminology interchangeably without regard to the precise early common law meaning. *See, e.g., Brown v. Kitterman*, 443 S.W.2d 146 (Mo.1969); *Langworthy v. Pulitzer Publishing Co.*, 368 S.W.2d 385 (Mo.1963); *Nordlund v. Consolidated Electric Co-op.*, 289 S.W.2d 93 (Mo.1956); *Swafford v. Miller*, 711 S.W.2d 211 (Mo. App.1986); *See also* Gerard, Petzall and Schiff, *Selected Aspects of the Missouri Law of Defamation*, 1957 Washington Univ. L.Q. 358. Thus, in Missouri, we have two types of libel actions, libel per se and libel per quod. *Langworthy, supra* at 388; *Anton v. St. Louis Suburban Newspapers Inc.*, 598 S.W.2d 493, 496 (Mo.App.1980).

██ Words which are defamatory on their face are "defamatory per se" and a libel action based on them is a "libel per se" action. A claim for "libel per se" is "actionable per se," and "special damages" need not be pleaded. *E.g. Brown, supra* at 151–153. However, a libel action may be based upon words which are not defamatory on their face but can be made defamatory by reference to extrinsic evidence. *Id.* This is a "libel per quod" action; and to state a claim for "libel per quod," the plaintiff must not only plead the extrinsic evidence, he must also plead his "special damages." *E.g., Swafford, supra,* 711 S.W.2d at 213.

Plaintiff here does not plead special damages. Therefore, he may only recover if the words in question are defamatory per se. *Id.* Plaintiff contends they are. Defendant contends they are not.

## SCOPE OF REVIEW

Normally, to review the grant of a motion to dismiss for failure to state a claim, we treat the alleged facts as true and view them and their inferences liberally and most favorably to the pleader. *E.g. Hester v. Barnett*, 723 S.W.2d 544, 549 (Mo.App. 1987). In a libel per se action, as here, the alleged defamatory words obviously must be pleaded. These words, our courts have said, must be read in context, giving them their ordinary meaning as understood by those to whom they are addressed. *E.g., Brown*, 443 S.W.2d at 150. This reading is consistent with the general mandate to read a plaintiff's petition liberally. However, our courts have also said that, in a libel per se action, the alleged defamatory words must be read "in their most innocent sense" to determine whether they are "unequivocally" libelous. *E.g., Walker v. Kansas City Star Co.*, 406 S.W.2d 44, 51 (Mo.1966). This reading is not necessarily consistent with a liberal reading of a plaintiff's petition.

No express reason is given for the two different standards used to read a libel per se petition. There is, however, a readily apparent factual difference in the allegations in question in each case which may warrant the difference in readings. The "most innocent" reading is used when the alleged libel per se is a statement that the plaintiff committed a crime, *see e.g. Walker, supra* at 51; *Hagler v. Democrat–News, Inc.*, 699 S.W.2d 96, 98 (Mo.App. 1985), and the "ordinary meaning in context" is used for all other statements alleged to be libelous per se. *See e.g., Brown, supra* at 150; *Diener v. Star–Chronicle Pub. Co.*, 230 Mo. 613, 132 S.W. 1143, 1148 (1910).

We need not determine here whether this difference in reading is an accepted rule in Missouri. The statements of defendants in question here are not libelous per se even when reading those statements in their ordinary sense. But, in reading the statements, we take people as they are and their language as it is. All words carry a subtext, and the meaning of words in context may be more or less than their pristine dictionary definition. In order to avoid a hidden use of "inducement" and "innuendo" in this libel per se action, we ascribe to defendants' words no more than the sole and compelling meaning they impute.

### Plaintiff's Allegations

The words in question were printed in five different articles appearing in the St. Louis Post–Dispatch. Plaintiff contends they impute his lack of fitness in his profession. We disagree.

For words to impute a lack of fitness in a person's profession the words must "impute fraud, want of integrity or misconduct in the line of his calling," *Brown, supra,* 443 S.W.2d at 154; *Buller v. Pulitzer Pub. Co.,* 684 S.W.2d 473, 477 (Mo.App.1984), or must affect him "in some way which is peculiarly harmful to one engaged in his trade." *Jacob v. Transcontinental & Western Air, Inc.,* 358 Mo. 674, 216 S.W.2d 523, 525 (1948). An article may focus on the plaintiff's behavior, but, if "it does not strike at his professional competence," it is not actionable. *Swafford, supra,* 711 S.W.2d at 216. And, "[t]o be actionable per se, the words must be defamatory on their face, without the aid of extrinsic proof." *Anton, supra,* 598 S.W.2d at 496; *Langworthy, supra,* 368 S.W.2d at 388. Sensibly read, the articles in question here do not accuse plaintiff of fraud or misconduct and do not attack his professional competence.

### Count I

At the time of the publications in question, plaintiff apparently was the Director of Support Services for the St. Louis County Special School District. From the record, we assume he was authorized to let contracts for the provisions of goods and services for the School District.

In Count I, plaintiff sets out five basic statements which, he alleges, defamed him. Three of these statements were published either on June 15, 1983 or June 16, 1983. Plaintiff's original petition was filed on June 21, 1985, more than two years after these publication dates, and his second amended petition, first alleging these three statements, was filed on November 10, 1986, some three years after the publication dates. Any libel action based on these three statements is barred by the applicable two year statute of limitations. Section 516.140 RSMo 1986.

Nonetheless, we set these publications out to respond completely to plaintiff's complaint against two statements which were published on June 29, 1983 and were set out in plaintiff's original petition.

*June 13, 1983*

Four no-bid architectural contracts were awarded last year by the Special School District of St. Louis County to a firm that had formerly employed the School Board President Joseph J. Sparacio. The contracts were awarded in a way that concealed the firm's identity.

*June 16, 1983*

Capobianco [plaintiff] . . . had been hired improperly by School Board members in contravention of state guidelines calling for employees to be recommended by the superintendent of schools.

. . .

The contracts were awarded without bidding and without board approval.

*June 29, 1983*

The Post–Dispatch reported on June 15 that the contracts had been awarded without bids by Robert L. Capobianco [plaintiff], one of Sparacio's top aides in the school district, in a manner that had concealed the identity of the firm.

•     •     •     •     •

[B]oard members . . . weren't sure that the contracts had been authorized in the first place by the Board.

Plaintiff argues there are three defamatory statements in the quoted portion of

the June 29 article: 1) he let no-bid contracts; 2) he concealed the identity of the contracting firm; and 3) he let contracts that were not authorized.

### 1. *He let no-bid contracts*

■ The statement that plaintiff let no-bid contracts is not defamatory *per se.* Nothing in the article states that bids were required before the letting of the contracts.

Plaintiff argues "the article[ ] certainly and plainly meant that plaintiff improper (sic) awarded 4 contracts without bid." Plaintiff attempts to show by innuendo that the article was defamatory. "[L]anguage is not libelous per se if it requires innuendo in order for the language to become libelous." *Willman v. Dooner,* 770 S.W.2d 275, 278 (Mo.App.1989).

The mere fact that contracts were awarded without bids being taken does not mean the contracts were awarded improperly. An ordinary reading does not compel that inference. Quite simply, the article reported the fact that no-bid contracts were let. The article does not state it was improper.

### 2. *He concealed the identity of the contracting firm*

■ Plaintiff next argues the June 29 article states he concealed the identity of the contracting firm. The article does state the manner in which plaintiff awarded the contracts had the effect of concealing the identity of the firm from the board. It does not state, however, that plaintiff improperly awarded the contracts nor does it state the manner in which he awarded the contracts was improper.

If the manner in which the contract was awarded was proper, and the article does not state it was not, the mere fact the identity of the firm was concealed would not mean plaintiff acted improperly. Again, quite simply, the article does not state plaintiff acted improperly.

If the article had stated, "Robert L. Capobianco concealed the identity of the firm from the board," it may very well have been defamatory per se because it would have attributed to plaintiff conduct that demonstrated his unfitness for his position.

Such conduct necessarily would show plaintiff had an intent to keep information from the board. However, since the article merely stated the manner of awarding the contracts concealed the firm, it did not impute an improper motive or purpose to plaintiff. The mere fact that plaintiff did something in a way that hid information from the board does not mean he intended to hide the information, and, thus, the statement in the article does not accuse plaintiff of improper conduct.

### 3. *He let contracts that were not authorized*

■ This alleged statement does not appear in the article. The article simply does not state plaintiff let contracts that were not authorized. What the article does state is that board members were not sure the contracts had been authorized. The legal effect of this statement is no greater than the effect of the statement that no-bid contracts were let. The article does not state it was improper for plaintiff to let contracts without authorization from someone other than plaintiff. If plaintiff was not required to obtain authorization before letting a contract, the fact a particular contract was let without authorization cannot impute improper conduct to plaintiff and, therefore, is not libelous per se.

More important, perhaps, any defamatory force that the statement has is due only to an inference that because the board member was not sure the contract was authorized, it must not have been. This, however, is neither the sole nor a compelling inference.

### Count II

In Count II, plaintiff complains about three statements appearing in an article published on June 30, 1983. These statements are:

1) Capobianco's hiring of an architectural firm whose relationship to Sparacio had been hidden from the rest of the board.

2) The contracts were awarded without bids by Capobianco.

3) Capobianco was hired without the recommendation of the superintendent. Such a recommendation is called for by state school standards but is not required by state law.

1) *Capobianco's hiring of an architectural firm whose relationship to Sparacio had been hidden from the rest of the board.*

▮ Plaintiff does not discuss this statement in his brief. Apparently, he believes it is libelous per se because it allegedly accuses him of hiding a possible conflict of interest. In his pleadings, he does not identify Sparacio. The article, however, identifies Joseph J. Sparacio as a onetime School Board President and former marketing representative for the firm.

Moreover, this sentence is in the passive voice and, thus, does not identify who did the hiding. While, at times, it may be sufficient to allege generally that words were published concerning the plaintiff, *Dietrich v. Pulitzer Pub. Co.*, 422 S.W.2d 330, 333 (Mo.1968); Rule 55.20, plaintiff did not do even that here. There is no allegation that this statement referred to plaintiff. To state the obvious, no claim for libel lies unless the allegedly libelous statement referred to plaintiff in some way.

2) *The contracts were awarded without bids by Capobianco.*

This statement is, in substance, the same as one of the objected to statements from Count I which we have already addressed.

3) *Capobianco was hired without the recommendation of the superintendent. Such a recommendation is called for by state school standards but is not required by state law.*

▮ This does not allege any improper conduct by plaintiff. It says plaintiff's hiring was improper but it does not say plaintiff himself did anything improper in being hired. No action of plaintiff's is even mentioned or alluded to in the statement, and the rest of the article adds nothing that suggests plaintiff did anything improper in obtaining his job. The mere fact that prop-er procedures were not followed in plaintiff's hiring does not mean that plaintiff is incapable of doing the job once hired.

## *Count III*

▮ In Count III, plaintiff complains about three statements published on November 21, 1983. These statements are:

1) Robert L. Capobianco, a former employee of the Special School district whose records there are under investigation by a federal grand jury....

2) Federal investigators are still examining Capobianco's former department at the Special District. All of his records have been subpoenaed by a federal grand jury.

3) The hiring was in contravention of state standards, which say that the school superintendent must recommend all employees for hiring.

1) *Robert L. Capobianco, a former employee of the Special School District whose records there are under investigation by a federal grand jury....*

2) *Federal investigators are still examining Capobianco's former department at the Special District. All of his records have been subpoenaed by a federal grand jury.*

Plaintiff argues it is false and misleading to say the investigation was focused on him and his records, because the investigation covered the Special School District generally and all the records of the District. This argument is misdirected. The article does not say the investigation focused on plaintiff. Again, plaintiff grafts his own inferences onto a statement that is not libelous per se in an attempt to make it so.

In his petition, plaintiff pleads the "[d]efendants knew and were informed that the Federal Grand Jury was not specifically investigating Mr. Capobianco and his former department's records at the Special School District but the Federal Grand Jury was examining all of the Special School District and all of its records." It is apparent that plaintiff's objection is not that defendants libelously stated his records were under investigation when they were

not; rather, plaintiff really complains that defendants truthfully stated his records were under investigation but failed to explain that all the records of the District were under investigation.

■ The latter complaint is not a valid complaint. Truth is an absolute defense to a publication, even if the publication appears to erroneously suggest some connection to illegal or improper conduct. *Hagler, supra,* 699 S.W.2d at 99. And, plaintiff admits to that defense in his own pleadings.

3) *The hiring was in contravention of state standards, which say that the school superintendent must recommend all employees for hiring.*

■ From the context in which this statement appears, the hiring referred to in this statement is the hiring of plaintiff. As with the third statement from Count II, this statement does not defame plaintiff in any way.

### Intentional Interference with a Business Expectancy

To state his claim for intentional interference with a business expectancy, plaintiff alleges that: he was seeking employment with the Hazelwood School District and there was a reasonable probability that he and that School District would have entered into a contractual relationship; as a result of the publication of the November 21 article, he and the School District were unable to reach an agreement "because of the potentially hostile environment regarding employment of [him] by District;" and "[b]y publishing [the] article, [d]efendants intentionally interfered and induced a breach of [this] relationship or expectancy."

Defendants moved for summary judgment based upon the separate affidavits of the defendants who wrote the article. In his affidavit, defendant Sorkin stated: "at the time he authored [the] article[ ] his sole intent was to fulfill his obligations as a reporter for the *St. Louis Post–Dispatch* to report on matters of public interest and he had no ulterior motive regarding the plaintiff Robert L. Capobianco or his career." Defendant Vespereny's affidavit is, in substance, the same. Plaintiff filed a counter-affidavit which we discuss later in detail.

The parties filed formal objections to their opponents' affidavits. On this record, the trial court granted defendants' motion for summary judgment, apparently without formally ruling on the parties' objections to the affidavits.

On appeal, plaintiff contends the defendants' affidavits were insufficient to prove they did not have the intent to interfere with his business expectancy, his expected job with the Hazelwood School District. His contention, as written, is twofold: 1) defendants' intention "must be proven by parol evidence to elucidate intention" and "justification must be proven or disproven by parol evidence;" therefore, "[s]ummary judgment is not appropriate;" and 2) the defendants' statements of their respective intentions are "conclusions of law," rather than the statement of facts required by summary judgment.

We are not certain what plaintiff means by his first complaint against "parol evidence." The cases he cites to support this argument have no relevance here. *Hawes v. O.K. Vacuum & Janitor Supply,* 762 S.W.2d 865 (Mo.App.1989); *Signature Pool v. City of Manchester,* 743 S.W.2d 538 (Mo.App.1988). Each of these cases turned on the intention of the parties as manifested in a written contract. In reversing a grant of summary judgment in each case, the court held the meaning of the contract was ambiguous and summary judgment should not have been granted because oral evidence outside the confines of the contract, parol evidence, was needed to resolve the ambiguity. *Hawes* at 868; *Signature Pool* at 541.

The relevance of that principle of law here is not readily apparent and plaintiff has not demonstrated its relevance. Nor has plaintiff convinced us the affidavit statements of defendants are conclusions of law rather than statements of fact. However, we need not and do not deter-

mine whether plaintiff's attacks on the affidavits are correct. Even if plaintiff is correct, he does not prevail.

In Missouri, to make a submissible case for intentional interference with a business expectancy, the plaintiff bears the burden of proving the absence of a justification for the defendant's conduct. *E.g. Francisco v. The Kansas City Star Co.*, 629 S.W.2d 524, 529 (Mo.App.1981). Here, the defendants' article was not defamatory and, therefore, defendants had the right to publish it to meet their legitimate business interest of publishing news. Defendants cannot be liable for an alleged intentional interference with a business expectancy if the interference itself is not independently wrongful. *See, e.g. International Plastics Devel., Inc. v. Monsanto Co.*, 433 S.W.2d 291, 296 (Mo.1968); *Briner Electric Co. v. Sachs Elec. Co.*, 680 S.W.2d 737, 740–742 (Mo.App.1984).

This does not end this matter, however. On appeal, plaintiff argues that defendants' culpability under Count IV is not based solely upon defendants' publication of the article in question, rather it "is based upon [defendants' actions] with regard to the inquiries of and remarks made to the individual member of the [Hazelwood] District's Board ... *in conjunction* with the publication of the article." (emphasis added). This argument, however, is neither supported by nor reflected in plaintiff's allegations.

As noted, plaintiff alleged the publication of the November 21 article was the cause of his loss of an expected job. Admittedly, he also alleges "[d]efendants contacted the members of the Board of the [Hazelwood] District and questioned the propriety of hiring Plaintiff." But he does not allege this latter conduct was a cause or a contributing cause to his loss of expectancy. Thus, according to plaintiff's allegations, he would have been hired but for the publication of the article. That is the sole basis of plaintiff's claim, as alleged; no more, no less. That is the issue the trial court must have addressed in granting defendants' motion for summary judgment. Plaintiff may not change his theory of recovery on appeal. *E.g., Schneider v. Forsythe Group, Inc.*, 782 S.W.2d 139, 146 (Mo.App.1989).

To be sure, plaintiff, in his counter-affidavit, did describe the alleged contact the individual defendants had with the member of the Hazelwood Board. He stated:

defendants contacted the members of the Board of the School District and questioned the propriety of hiring me, telling Board members that they could not hire me because of my record at [the] Special School District, that I had been improperly hired by [the] Special School District and that my records at [the] Special School District were presently under investigation by a Federal Grand Jury.

.    .    .    .    .

As a result of [this] direct contact with the Board members, and the article of November 21, 1983, [he] was dropped by the Hazelwood School District as a candidate....

On appeal, defendants contend, as they did in the trial court, that plaintiff's affidavit statements are hearsay, inadmissible at trial, and, therefore, not competent to support plaintiff's objections to defendants' motion for summary judgment. We agree. *E.g. Fitzpatrick v. Hoehn*, 746 S.W.2d 652, 654 (Mo.App.1988). Thus, even if plaintiff's claim was based upon the publication and defendants' alleged conduct, plaintiff's bare allegations would not preclude the trial court's grant of summary judgment.

As noted, the record before us does not show whether the court ruled upon defendants' objection. But, the court did grant defendants' motion for summary judgment, and we will affirm the trial court if it reached the right result, regardless of its reasons. *See e.g., Maryland Plaza Redevelopment v. Greenberg*, 594 S.W.2d 284, 286 (Mo.App.1979).

Judgment affirmed.

SMITH, P.J., and CARL R. GAERTNER, J., concur.