Ṿ

HUDSON, Defendant in Error, v. GARNER AND WIFE, Plaintiffs in Error.

1. Words charging a woman with being a "whore" are actionable *per se*.
2. An inuendo in the petition, that the defendant intended by such words to charge the plaintiff with adultery, being unnecessary, may be rejected.
3. Where slanderous words are spoken falsely of another, it is unnecessary to aver or prove express malice.

*Error to Benton Circuit Court.*

The facts sufficiently appear in the opinion.

*F. P. Wright,* for plaintiff in error, among other points, made the following : 1. The petition does not state facts sufficient to constitute a cause of action. The complaint is that Mrs. Garner used words by which she meant that plaintiff had been guilty of adultery, and it does not appear that the plaintiff is or ever was a married woman. ⸳ (3 Mo. 160.) 2. Admitting that the words are actionable in themselves, if spoken *falsely* and *maliciously*, whether they were intended to impute either adultery or fornication, yet as plaintiff, by inuendo, has declared that they were intended to impute adultery, she was bound to prove that they were uttered in the sense thus ascribed to them. (Smith v. Cary, 3 Camp. 460; 1 Chitty's Plead. 437 ; Mix v. Woodward, 12 Conn. 262 ; Williams v. Scott, 1 Cromp. & Mees. 657 ; 20 Mo. 542.) 3. The petition is also bad in failing to aver that the words were spoken and published falsely and *maliciously*. (1 Chitt's Pl. 436 ; R. C. 1845, p. 1011.)

*Gardenhire* and *Morrow,* for defendant in error. 1. The word " whore" imports *ex vi termini* a fornicatrix and an adulteress. (Johnson's Dic. ; R. C. 1845, p. 1011.) 2. Words spoken slanderous in their character are *prima facie* maliciously spoken, unless proven to be true. 3. It was not necessary to prove the inuendo. (Starkie on Slander, 213, 216, 217 ; 4 Wend. 324; 5 Johns. 225 ; 19 Mo. 513.)

Hudson v. Garner.

RYLAND, Judge, delivered the opinion of the court.

This is an action for slander. The petition is according to the form under the new code of practice, and it charges that Polly Garner, the wife of the other defendant, Luke Garner, in the presence and hearing of Calvin Beck and divers other persons, on the first day of January, in the year 1854, at the county of Benton, spoke and published the following false and slanderous words, of and concerning the plaintiff; that is to say : " Go along home (speaking to plaintiff's son John) and see your whorish mother, and tell your mother to send you down to the south, to see your father Tom (intending then and thereby to charge the plaintiff with having been guilty of the crime of adultery with negro Tom). Your mother (speaking to the plaintiff's son John) is a whore, and I can prove it. Damn your black soul (speaking to plaintiff's son John); go along home to your whorish mother; you'll get to the south directly to your father ; any how, Tom is your father. Your mother (speaking to plaintiff's son John) is nothing but a damned whore—G–d damn her whorish soul ; she was nothing but a whore any how ;" meaning then and there and thereby, that the plaintiff was a woman of lewd character, and that plaintiff had been guilty of the crime of adultery with said negro Tom : and concludes by laying her damages at the sum of ten thousand dollars.

The defendants appear and answer ; deny the speaking of the words, and deny all the allegations of the plaintiff's petition. Upon the trial, the jury found the defendants guilty, and assessed the plaintiff's damages at the sum of three thousand dollars.

The defendants file their motion for a new trial, which was overruled ; also their motion in arrest of judgment, which was likewise overruled. They excepted, and bring the case here by writ of error.

In looking into the bill of exceptions, the evidence preserved plainly establishes the speaking of the words ; nor is there any

error on the part of the inferior court in relation to the instructions given and refused.

The principal matters relied on by the plaintiffs in error for a reversal of the judgment, arise upon the plaintiff's petition. It is alleged that the suit is brought by Ursula Ann Hudson, a single woman, and the petition, by its inuendoes, charges the defendant, 1st, with intending to impute, by the speaking of the words, the crime of adultery to the plaintiff; that it nowhere appears that the plaintiff had ever been married, or had ever been in a situation to commit the crime of adultery; that, admitting the words are actionable in themselves, if spoken falsely and maliciously, whether they intended to impute either adultery or fornication, yet as the plaintiff, by inuendoes, has declared that Mrs. Garner intended, by speaking the words, to impute adultery, the plaintiff was bound to prove they were uttered in the sense thus ascribed to them. To support this view, various authors have been cited, which I will notice in proper time.

By our statute, it is actionable to publish, maliciously and falsely, in any manner whatsoever, that any person has been guilty of fornication and adultery. In this petition, the words are actionable of themselves; and there is no necessity for any colloquium, or any inuendo, to explain the meaning of such words.

In this petition, the plaintiff has not set forth what the pleaders call a colloquium. But, following the form which our new code of practice says may be used, she charges that Polly Garner, one of the defendants, " spoke and published the following false and slanderous words concerning the plaintiff. " Then, after setting forth the words actionable in themselves, the plaintiff, by inuendo, charges that the defendant meant to impute the crime of adultery to the plaintiff. Can this inuendo be rejected and stricken out as surplusage? If it can, then the petition of the plaintiff may be considered sufficient to support the judgment, however carelessly and unprofessionally drawn.

An inuendo is only explanatory of some matter already expressed; it may apply to what is already expressed, but can not add to or enlarge or change the sense of the previous words. (1 Chitty Plead. 437.) An inuendo, says Chitty, (1 vol. Plead. 438,) though it may, in the particular case, be unnecessary, "will sometimes limit and confine the plaintiff in his proof, to show that the slander had the meaning thereby imputed to it : thus, where the plaintiff alleged that he was treasurer and collector of certain tolls, and that the defendant spoke of him, as such treasurer and collector, certain words, ' *thereby meaning* that the plaintiff, *as such treasurer and collector*, had been guilty,' &c., it was held that the plaintiff was bound by the inuendo to prove that he was treasurer and collector. If the words imported either fraud *or* felony, but by the inuendo they be *confined* to the latter, the plaintiff must prove they were spoken in the latter sense. The inuendo affixing a particular signification to the slander, should therefore never be unnecessarily adopted, as is too frequently the case. It is not unusual even, after setting out words which clearly *of themselves* import a charge of felony, to add, ' thereby then meaning that the plaintiff had feloniously stolen,' &c. ; this is unnecessary, and, as it is a statement of a mere legal conclusion, is improper, though it may be surplusage." On the other hand, where *new* matter, introduced by an inuendo, without any *antecedent colloquium* or statement to which it can refer to support it, is altogether unnecessary to sustain the action, then the *inuendo* may be rejected as surplusage.

. The case of Smith v. Carey, reported in 3 Campb. 460, is a very meagre one. The action is for slander of plaintiff in his trade. The words were, that " he lived by swindling and robbing the public." These were laid differently in different counts of the declaration ; but in each count, there was an inuendo that the defendant thereby meant " that the plaintiff had been and was guilty of felony and robbery." The words were proved as laid, but appeared to allude to a transaction from which it might be inferred that the defendant only meant to

charge the plaintiff with *a fraud.* Lord Ellenborough said : " The words were, in themselves, actionable ; and if there had been no such inuendo as to their meaning, the plaintiff would certainly have been entitled to a verdict ; but the plaintiff was bound to show they were spoken in the sense he had ascribed to them ; and if the jury should be satisfied they were spoken with intent to impute not felony, but merely fraud, there must be a verdict for the defendant." It is' not in our power to see how the charge was made here : no doubt, though, the action was for words spoken against the plaintiff in connection with his trade, and that there was a colloquium charging the words as having been spoken of the plaintiff in his character and capacity of tradesman. The colloquium was necessary here, as the action was for slander of the plaintiff in his trade : then charging the words as having been spoken of the plaintiff and of his trade, and his conduct as tradesman, and by inuendo asserting the meaning of the words thus spoken to impute felony and robbery in the plaintiff in his trade, the inuendo made an important part of the charge ; it gave the words their particular meaning. But such is not the case at bar, as I will hereafter show. The case of Smith v. Carey, therefore, is too meagre a report to be entitled to much weight.

The case of Williams v. Hott, (1 Cromp. & Mees. 675,) is reported at large, and, with the law laid down there, we have no hesitation in concurring. This was an action of slander for accusing the plaintiff of felonious embezzlement. The declaration contains five counts ; at the commencement of the first there is a prefatory averment, that, before and at the time of the committing of the grievances thereinafter mentioned, he had been and was employed as the *servant* of certain persons, to-wit, the mayor, aldermen and burgesses of Warwick, in a certain situation, office and employment, to-wit, the situation, office and employment of one of the chamberlains of the commons and commonable lands within the parish of St. Mary, in the borough of Warwick ; by virtue and in exercise of which employment, it was the duty of the plaintiff to receive and take

in his possession, from time to time, divers sums of money for and on account of the said mayor, aldermen and burgesses. This office of chamberlain was not averred to be a public office, nor was it so described that the court could ascertain whether it was a public office or not. The declaration then avers that the defendant, continuing to injure the plaintiff, and to cause it to be suspected and believed that he had been guilty of fraudulent and *felonious embezzlement*, and to subject him to the pains and penalties provided by the laws against persons guilty thereof, in a certain discourse which defendant then and there had of and concerning the plaintiff, *as such servant of said mayor, aldermen and burgesses*, and of and concerning the conduct of the said plaintiff, in his said employment, spoke and published of and concerning the plaintiff, and of and concerning the plaintiff's conduct, as such servant as aforesaid, in his said situation, office and employment, the words set out in the declaration. At the end of the count, there is an inuendo stating that the defendant meant that the plaintiff had fraudulently and feloniously, and against the form of the statute in that behalf, embezzled money received by him by virtue of his said employment.

The three first counts ascribed to the plaintiff the character of servant; they state the alleged slanderous words to have been spoken of the plaintiff as such servant, and they aver the meaning of such words to be, that the plaintiff had committed embezzlement against the form of the statute. Under the manner in which the plaintiff had charged the slanderous words to have been spoken, it was necessary that he should come within the statute relating to embezzlement. (7 and 8 Geo. IV, chap. 29, sec. 47.) The court held that the plaintiff did not come within the fair meaning of that statute; that he was not the servant of another, but fills an office of his own; that he did not receive money in the course of his employment as the mere agent of another, but was entitled, by virtue of his office, to keep the money in his hands until the end of the year for which he was appointed.

The fourth count is differently framed ; it is not stated in that count that the plaintiff was the servant of any one, but that the words were spoken " of and concerning the plaintiff, and of and concerning the conduct of the plaintiff, in a certain employment, to-wit, the employment, situation and office of one of the chamberlains of the commons and commonable lands within the parish of St. Mary, in the borough of Warwick," and there is an inuendo similar to those contained in the preceding counts. It has been contended that this inuendo may be rejected, and that the plaintiff will then be entitled to a verdict ; but the court does not state what the nature of the situation of chamberlain is ; and, without knowing this, how can the inuendo be rejected ? You may reject on demurrer, or on motion in arrest of judgment, which is not warranted by the preceding allegations in the declaration ; and all the cases cited by the plaintiff's counsel are cases of this description. But the question here is, whether you may reject at the trial an inuendo which is good upon the face of the declaration. By such an inuendo, the plaintiff makes it a part of his case that the alleged slander bears the peculiar character which he assigns to it. In this case, the question was, whether the plaintiff was such a clerk or servant, or person employed in that capacity, as is embraced by the statutes concerning embezzlement. The Barons Bayley and Vaughan, who tried the case, thought that he was not ; and as the slander, by the colloquium and the inuendoes, was against him in that capacity, he having failed to show himself by evidence in that capacity, he could not recover. The inuendoes were sensible, and had a direct tendency to explain the charges as set forth, and as mentioned in the colloquium. But such is not the case at bar.

In Harvey v. French, (1 Cromp. & Mees. 11,) a count for a libel stated that defendant published a false libel of and concerning the plaintiff, containing amongst other things the false, &c. matter, of and concerning the plaintiff ; that is to say, " Threatening letters. — The Middlesex grand jury have returned a true bill against a gentleman of some property, named

28—VOL. XXII.

French, (meaning the said plaintiff,)" with this inuendo : " That the said plaintiff will verify that the said defendant thereby, then and there meant to insinuate and have it understood, that the said plaintiff had been suspected to have been, and had been guilty of the offence of sending a letter, without any name or signature thereto subscribed, directed to one Trotter, threatening to kill and murder the said Trotter, a subject of the realm, with a view and intent to extort." This inuendo was held bad ; and it was also held that the matter was libelous without the inuendo, and that the inuendo might be rejected as surplusage. Lord Ten-derden, chief justice, said : " We are of opinion, that the in-uendoes in the 5th and 6th counts of this declaration are not warranted by the preceding words in those counts ; and all that goes before is, that a threatening letter had been sent by plain-tiff ; but it by no means follows that a threatening letter has been directed to any person of the name of Trotter, or that it contained any threat to kill or murder the person to whom it was addressed, as averred in that inuendo. Unless, therefore, these counts can be sustained without the inuendo, the judg-ment ought to be reversed. We are however of opinion, that these counts, after rejecting that averment, may be sustained without it. Then, the count will stand thus : " Threatening letters.—The Middlesex grand jury have returned a true bill against a gentleman of some property, named French, (mean-ing the said plaintiff. )"

In Roberts v. Camden, (9 East. 95,) Lord Ellenborough, (who afterwards tried Smith and Carey, already cited from 3 Campbell,) held, that where such new matter was not necessary to support the action, an inuendo, without any colloquium, may well be rejected as surplusage, and can have no effect in en-larging the sense of the words used.

In Beirer v. Bushfield, (1 Watts, 23,) the words laid in the declaration to have been spoken were : " He was guilty with a woman, for he went into bed with Mrs. Kislar, and stroked her, and he could prove it ; thereby meaning that the said plain-tiff had committed the crime of adultery with the wife of said

Hudson v. Garner.

John Kislar." Gibson, chief justice, in delivering the opinion of the court, said : " The objection is, that the inuendo has carried the meaning of the words beyond their natural import, by converting them into a charge of adultery by a man who is not alleged to have been married. The office of an inuendo is, undoubtedly, to fix the meaning of the speaker, by a reference to something gone before, where the abstract sense of the words would otherwise fall short of an imputation of legal criminality ; and it is a rule that where it enlarges the meaning, without such a reference to an imputation which subjects the accused to an indictment or civil disability, it is fatal to the count even after verdict. If simple fornication then were not an indictable as well as scandalous crime, I would say this declaration contains no cause of action. But if the charge of that crime or adultery will indifferently support an action for words, why should the plaintiff be bound to discriminate very nicely between the charge of the one or the charge of the other ? But as no explanatory matter is laid as inducement, with which the inuendo can be coupled, why may it not be rejected as surplusage—the words being actionable without it ? I admit it may not be done where the inuendo serves to make words actionable, which would otherwise not be so ; for that would extract the sting from the charge as laid, and deprive the declaration of its substance. May it not be done, however, when explanation is superfluous, the words imputing a technical offence, by force of their intrinsic meaning ? I know of no case which forbids it. The question, then, is, whether these words are actionable when stripped of the meaning assigned to them by the inuendo ? By the modern decisions, the sense in which words are received by the world, is that which courts of justice are to ascribe to them : that question, then, can not admit of a doubt, for the words in this declaration convey to the popular apprehension a charge of fornication in terms less coarse, though not less explicit, than the most pointed that could be selected."

Whatever may formerly have been the rule, the law is now

settled that, in actions of slander, the words are to be understood in their popular sense. It is too late to call on a court to tax its ingenuity to find out some sense in which the words might have been spoken innocently. That absurdity is exploded. In Andres and wife v. Koppenheafer, (3 Sergt. & Raw. 257) and in Walter v. Singleton, (7 Sergt. & Raw. 449,) it was held actionable to say of the plaintiff, "he (meaning the plaintiff) has committed fornication," notwithstanding the declaration avers that the plaintiff was, at the time of the uttering the words, a married man. In Thomas v. Crosswell, (7 Johns. 271,) Spencer, J., said: "An inuendo, as has often been decided, can not add or enlarge, extend or change the sense of the previous words; and the matter to which it alludes must always appear from the antecedent parts of the declaration; but when the new matter stated in an inuendo is not necessary to support the action, it may be rejected as surplusage."

The cases from Pennsylvania are very similar to this; there, the court held that the inuendo might be stricken out. In looking over the various decisions referred to by the counsel, and many others which an examination somewhat extended brought before me, I conclude that an inuendo, where there has been no colloquium or inducement laid by which the inuendo can become needful as an explanation, and when the words charged are actionable by themselves, may be rejected. The case from Watt's Reps. of Beirer v. Bushfield, is directly in point; there, the inuendo made the act to be adultery, and yet the plaintiff was not shown to be a married man. The words charged did not need an inuendo; there was no inducement—nothing which was necessary to be explained by the inuendo. It was rejected; Chief Justice Gibson stating "he knew no case which would forbid its rejection." In Walton v. Singleton, a married man was charged with committing an act of fornication; it was held actionable.

Here, the words charged were understood to mean an unlawful sexual intercourse, and the hearers must not be considered very nice in discriminating; they knew when a married woman

was called "a whore," what she was charged with; when a single woman was called "a whore," what she was charged with: they also knew that it was the same act in each—the same criminal matter, though in one case it is called "adultery," and the other, "fornication." I conclude, therefore, that the inuendo, in this case, may be, and must be, stricken out.

There is no force in the objection made against the plaintiffs' withdrawing the testimony of Colvin Beck, and then introducing witnesses who knew more about the transaction.

When slanderous words are spoken of another falsely, the law will affix malice to them. There is no necessity of proving express malice.

The instructions given by the court to the jury were proper enough; they explained the law of the case, and the court properly overruled those asked for by the defendants.

In looking over the whole case, we find no error for which this court should reverse. The judgment below is affirmed; Judge Leonard concurring.