Don ANTON, Appellant,

v.

ST. LOUIS SUBURBAN NEWSPAPERS, INC., et al., Respondents.

No. 41257.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 4, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 18, 1980.

Application to Transfer Denied
June 10, 1980.

Jay G. Newquist, St. Louis, for appellant.

Robert B. Hoemeke, St. Louis, for respondents.

REINHARD, Judge.

Plaintiff, Don Anton, instituted this suit for libel against St. Louis Suburban Newspapers and its owner and publisher, Frank C. Bick. In Count I of his petition plaintiff prayed for $50,000 actual damages and $1,000,000 punitive damages against the defendant newspaper. In Count II, he prayed for a like sum against the owner-publisher. Defendants moved jointly to dismiss the action; the trial court sustained the motion and ordered that the suit be dismissed. Plaintiff appeals from the order dismissing the action.

In Count I of the First Amended Petition, plaintiff alleged:[1]

1. That the Defendant, the St. Louis Suburban Newspapers, Inc. d/b/a South County Journal is a corporation duly organized under the laws of the State of

---

1. Although we refer only to Count I which pertains to defendant St. Louis Suburban Newspapers, Inc., our pronouncements regarding this defendant are also applicable to defendant, Bick.

Missouri, and is engaged in the publishing of a newspaper called the South County Journal.

2. That the Plaintiff is a duly licensed and practicing Attorney in St. Louis County, Missouri, and has always maintained and enjoyed a good reputation in such profession.

3. That on June 28, 1978, said defendant published in said South County Journal the following false, malicious and libelous language of and concerning the Plaintiff:

"This sleazy sleight-of-hand has been the work of Don Anton (the Plaintiff herein) . . ."

A true copy of said June 28, 1978 article in its entirety is incorporated herein by reference and attached hereto as Exhibit A.

4. And again on July 5, 1978, said Defendant published in said South County Journal the following false, malicious and libelous language of and concerning the Plaintiff:

" . . . it becomes abundantly obvious the administrative coup has been carefully orchestrated by Richard Walker, president of the discredited Local 398 of the International Association of Firefighters and his henchman attorney Don Anton (the Plaintiff herein) · . . . Residents there (Affton) are telling Walker, Anton (Plaintiff herein) and their bunch they want no part of these sleazy dealings."

A true copy of said July 5, 1978 article in its entirety is incorporated herein by reference and attached hereto as Exhibit B.

5. That the aforesaid words published by said defendant were read and understood by the general public to have their ordinary meaning about the Plaintiff, as follows; that he is an unscrupulous supporter or adherent of a political figure; and that he is motivated by the hope of personal gain; and that he is an associate in crime.

6. The aforesaid words were published by said defendant with said defendant's knowledge that the words were false or with reckless disregard of whether they were false or not so that said defendant entertained serious doubt as to the truth of its said publications.

7. That the aforesaid words published by said defendant then and there did, still do and will in the future continue to provoke the plaintiff to wrath and expose him to public hatred, contempt and ridicule and the aforesaid words have greatly injured and damaged plaintiff's reputation both as a professional attorney and thereby diminished his earnings and as an individual and have also deprived him of the benefits of public confidence and social associations.

8. That the said defendant has with actual malice on prior occasions published defamatory words about the Plaintiff repeatedly to such an extent to show a deliberate pattern to libel plaintiff.

The alleged libelous publications were attached as exhibits to the petition.[2]

In defendants' motion to dismiss the petition, they alleged that the newspaper statements failed to constitute malicious defamation as a matter of law, that the statements were fair comment and privileged, that the statements were opinions which were constitutionally protected by the first amendment, and that plaintiff's *ad damnum* clause was defective.[3] The court

---

2. The exhibits are set forth in full as Appendices A and B.

3. On appeal, defendants have not pressed their claims that the action could have been dismissed because the statements were fair comment and privileged, or that the *ad damnum* clause of plaintiff's petition was defective. Briefly, we note that the existence of the fair comment privilege is rarely, if ever, determinative on a motion to dismiss for failure to state a claim upon which relief may be granted be-

cause the plaintiff may be able to show an abuse of the privilege by proving the defendant acted with actual or express malice in publishing the statements. *Coots v. Payton*, 365 Mo. 180, 280 S.W.2d 47, 52 (Mo. banc 1955). We also hold that the *ad damnum* clause of plaintiff's petition is not defective. Plaintiff as a private person (defendants concede for purposes of their motion to dismiss that plaintiff is not a public figure) may recover both actual and punitive damages, if he meets the appropri-

sustained the motion without specifying on which ground it was dismissing. On appeal, we must resolve if the facts pleaded, together with the reasonable inferences to be drawn therefrom, when viewed in the light most favorable to plaintiff, involve substantive principles of law which entitle plaintiff to relief. *Hunt v. Gerlemann*, 581 S.W.2d 913, 915 (Mo.App.1979). We must affirm the circuit court's order dismissing the action if any of the grounds asserted for dismissal are valid. *Butler v. Circulus, Inc.*, 557 S.W.2d 469, 471 (Mo.App.1977). We disagree with defendant's contention that the alleged libelous statements failed to constitute malicious defamation as a matter of law, however, find that the trial court correctly sustained defendant's motions because the libelous statements were afforded a constitutional privilege.

### I. Libel Per Se

■ There are two types of libel actions,[4] libel per se and libel per quod. *See Missouri Church of Scientology v. Adams*, 543 S.W.2d 776, 777 (Mo. banc 1976). To be actionable per se, the words must be defamatory on their face without the aid of extrinsic proof. *Langworthy v. Pulitzer Publishing Co.*, 368 S.W.2d 385, 388 (Mo.1963). Where words are actionable per se, the petition need not allege special damages. *Id.* Plaintiff has not alleged special damages and concedes that his petition would be insufficient unless the alleged libelous words are found to be libel per se. The Missouri Supreme Court said in *Langworthy v. Pulitzer Publishing Co.*:

> In determining whether language is libelous per se, it must be viewed stripped of any pleaded innuendo. The meaning of the phrase "per se" is "taken alone, in

itself, by itself." Words which are libelous per se do not need any innuendo, and, conversely, words which need an innuendo are not libelous per se.

368 S.W.2d at 388–89 *quoting Shaw Cleaners & Dryers, Inc. v. Des Moines Press Club*, 215 Iowa 1130, 245 N.W. 231, 233 (1932). Whether words are libelous per se is a question of law which the court may properly decide on a motion to dismiss. *Missouri Church of Scientology v. Adams*, 543 S.W.2d at 777.

■ Plaintiff contends that the language of the article is directed toward him in his professional capacity. In *Brown v. Kitterman*, 443 S.W.2d 146 (Mo.1969) the court stated:

> [F]alse words which tend to prejudice the person spoken of in his business, profession, office, occupation, or employment, are actionable without proof of special damages if they affect him in such calling in a manner that may, as a necessary consequence, or does, as a natural consequence, prevent him from deriving therefrom that pecuniary reward which, probably he might have obtained. . . .
> [T]o be actionable per se that words must be defamatory of the plaintiff in such calling in that they impute fraud, want of integrity or misconduct in the line of his calling.

*Id.* at 154. It has long been settled in Missouri that "[o]ral or written words . . . which charge [an attorney] with dishonest or improper practices in the performance of his duties as an attorney are actionable per se." *Moritz v. Kansas City Star Co.*, 364 Mo. 32, 258 S.W.2d 583, 588 (banc 1953). Further, we recognize that: "To render words spoken or written of and concerning an attorney actionable per se as being inju-

---

ate standards of proof. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974). Even if plaintiff were a public figure, he could recover punitive damages in an appropriate case. *Buckley v. Littell*, 539 F.2d 882, 897 (2d Cir. 1976) *cert. denied* 429 U.S. 1062, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977).

4. Libel was defined in § 559.410 RSMo. 1969 as follows: "A libel is the malicious defamation of

a person made public by any printing, writing, sign, picture, representation or effigy tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence or social intercourse." Section 559.410 was repealed by Laws 1977, Senate Bill No. 60, Effective Jan. 1, 1979. Since plaintiff filed his action October 31, 1978, § 559.410 still provides the applicable definition of libel in this case.

rious to him professionally, they must affect him in his professional character, and impute incompetency, dishonesty, or misconduct, incompatible with the proper conduct of his profession." 50 Am.Jur.2d Libel and Slander § 122 (1970).

■ In deciding whether the words or the statements alleged to be libelous per se are in fact defamatory, they must be read in connection with the whole publication rather than in isolation, *Thomson v. Kansas City Star Co.*, 387 S.W.2d 493, 496 (Mo. 1965), and they must be taken in their plain and ordinary meaning or as they would be generally understood by those to whom they are addressed. *Hylsky v. Globe Democrat Publishing Co.*, 348 Mo. 83, 152 S.W.2d 119, 122 (1941). We now consider the editorials of June 28, 1978 and July 5, 1978 in light of the above enunciated principles.

The June 28th editorial contains, among others, the following statements: 1.) that the Affton Fire Protection District's Board of Directors is now entirely composed of three appointed officials rather than three elected ones, and that the non-elected board has "disposed of the district attorney . . and hired Don Anton as lawyer . . ."; 2.) that one of the elected officials left his post because of "threats against his family and acts of vandalism on his home"; 3.) that "[t]o add insult to injury, this entire 'coup' apparently was accomplished illegally"; because the board met in unannounced, secret meetings in violation of the state's Sunshine Law; and 4.) that "[t]his sleazy sleight-of-hand has been the work of Don Anton. . . ."

■ Does defendants' statement "this sleazy sleight-of-hand has been the work of Don Anton," [5] when stripped of any possible innuendos and read in light of the entire article, affect him in his professional character and impute to him incompetency, dishonesty, or misconduct incompatible with the proper conduct of his profession? We believe it does because the language could be interpreted to imply that plaintiff partic-

ipated in acts (the threats and vandalism) which caused one Board member to leave office and that as a result of these actions plaintiff was hired as attorney for the district. Such conduct, if true, would be incompatible with the proper conduct of a lawyer. We thus conclude that plaintiff's petition alleges a claim in libel per se.

■ The July 5th editorial refers to an obvious administrative "coup" orchestrated by Walker, president of Local 398 of the International Association of Firefighters, and "his henchman, attorney Don Anton." The editorial further states that "[e]lected members of the Affton FPD Board have all resigned, tired and justly afraid of the threats, harassment and intimidation tactics they had to face in office." It also states that three appointed directors have replaced the elected directors who resigned and that the appointed directors have been "mere pawns of the Walker-Anton diumvirate." The article concludes that "[r]esidents there are now telling Walker, Anton and their bunch they want no part of these sleazy dealings."

We believe the logical import of the statement "these sleazy dealings" is to impute to plaintiff the facts set forth in the article. As with the June 28th article, we believe that the actions imputed to plaintiff by the July 5th article could, if proven to be false, impute unethical conduct by plaintiff as a lawyer and therefore constitute libel per se.

We do not agree with plaintiff that the term "henchman" as used in this editorial constitutes libel per se. We acknowledge that the word may not be considered complementary, however, we cannot say that as it is used here it affects plaintiff's professional character or imputes to him incompetency, dishonesty or misconduct in his profession.

■ In view of the above findings, we hold that plaintiff's petition withstands the

---

5. At one point in their brief, defendants concede that "[i]t is clear that the editorials complained of and taken out of context refer to the facts in the editorial by use of the demonstrative pronoun: '*This* sleazy sleight-of-hand.'"

challenge that it is insufficient because he has not stated a claim of libel per se.[6]

## II. Constitutional Privilege

As a second ground for sustaining the trial court's action in dismissing plaintiff's petition, defendants contend the statements complained of "are expressions of opinions which are absolutely privileged under the first amendment to the United States Constitution."

We approach this issue with the realization that since *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), some countervailing interests have existed between the desire for a free and uninhibited press and the law of libel and slander. Therein, the Supreme Court recognized that our nation has made a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks . . . ." *Id.* at 270, 84 S.Ct. at 721. This constitutional bias toward unfettered speech comes at the expense of compensation for harm to reputation at least where a topic of public concern or interest is involved. *Gertz v. Robert Welch, Inc.*, 418 U.S. at 339–43, 94 S.Ct. at 3007–08. Nevertheless, the states still retain a legitimate interest in providing a vehicle for the vindication of injury to reputation provided that they adhere to recognized constitutional standards now prevailing in this area of the law. *Id.* The individual's right to the protection of his own good name "reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty. The protection of private personality, like the protection of life itself, is left primarily to the individual States

. . . ." *Rosenblatt v. Baer*, 383 U.S. 75, 92, 86 S.Ct. 669, 679, 15 L.Ed.2d 597 (1966) (Stewart, J. concurring).

*Gertz* focuses on the nature of an allegedly libelous statement: "Under the first amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in a false statement of fact." *Id.* 418 U.S. at 339–40, 94 S.Ct. at 3007. While courts and scholars have differed on the exact meaning of *Gertz*, there is a consensus that opinions are afforded a privilege under the first amendment. Under the controlling constitutional standards, public officials, public figures and private persons suing media defendants must establish that the defendant published a false statement of fact. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 490, 95 S.Ct. 1029, 1043, 43 L.Ed.2d 328 (1975); *Gertz v. Robert Welch, Inc.*, 418 U.S. at 347, 94 S.Ct. at 3011. The logic underlying the privilege is that an opinion can never be objectively proved true or false. *Buckley v. Littell*, 539 F.2d at 893.

However, this constitutional privilege afforded opinions is not absolute but is instead qualified. *See* Restatement (Second) of Torts § 566 (1976) and comments thereto.[7] The Restatement distinguishes four specific situations involving publication of opinions.

Only two of the four situations are relevant here: the first situation being where the "defendant bases his expression of a derogatory opinion of the plaintiff on his own statement of false and defamatory facts." *Id.* Comment C. In this set of circumstances, the defendant is liable for the false statements but not for the expres-

---

**6.** The fact that the petition apparently contains innuendo does not affect our holding that it is sufficient to state a claim for libel per se. Any pleaded innuendo may be disregarded when the language complained of is actionable per se. *Hudson v. Garner*, 22 Mo. 423 (1856); *Rail v. National Newspaper Ass'n*, 198 Mo.App. 463, 192 S.W. 129, 134 (1917).

**7.** § 566 Expressions of Opinions

A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

sion of opinions. In the second situation, if the defendant expresses a derogatory opinion concerning the plaintiff without disclosing the facts upon which he has based his opinion, he is liable if the comment creates "the reasonable inference that the opinion is justified by the existence of unexpressed defamatory facts."[8] In essence under the Restatement Second view, the constitution protects opinions regardless of whether they are false or libelous provided the facts supporting the opinions are set forth. *Buckley v. Littell*, 539 F.2d at 893.[9] In the first situation where the facts underlying the opinion are set forth in the article, the opinion is afforded a privilege because each reader may draw his own conclusion to support or challenge the opinion. *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 397 N.Y.S.2d 943, 366 N.E.2d at 1306 (1976).

The determination of whether an allegedly defamatory statement is an assertion of fact or an opinion is a question of law for the court. *Letter Carriers v. Austin*, 418 U.S. 264, 283, 94 S.Ct. 2770, 2781, 41 L.Ed.2d 745 (1974). As one court has stated: "The distinction frequently is a difficult one, and what constitutes a statement of fact in one context may be treated as a statement of opinion in another, in light of the nature and content of *the communication taken as a whole.*" *Gregory v. McDonnell Douglas Corp.*, 12 Cal.3d at 601, 131 Cal.Rptr. at 644, 552 P.2d at 428 (emphasis added).

We conclude that the statement "this sleazy sleight-of-hand has been the work of Don Anton" in the June 28th editorial and the statement that "[r]esidents there [Affton] are telling Walker, Anton and their bunch they want no part of these sleazy dealings" in the July 5th editorial are opinions. In essence, they represent the author's feelings or "opinions" concerning plaintiff's conduct relating to the fire district merger. These opinions are, even if falsely and insincerely held, constitutionally privileged if the facts supporting them are set forth. Here, defendants have set forth the facts upon which they based their opinions. We have closely scrutinized plaintiff's petition and although the editorials are attached and made a part of the petition, the only portion specifically complained of are opinions. Even giving the petition its broadest and most liberal interpretation, it cannot be read as alleging that the libelous words which damaged plaintiff were the facts underlying the opinions. As pleaded, the court properly sustained defendant's motion to dismiss because the complained of defamatory language was constitutionally protected.

Judgment affirmed.

DOWD, P. J., and CRIST, J., concur.

### APPENDIX A

Just who is calling the shots in the Affton Fire Protection District since voters lost control?

In the span of four short weeks the board of directors has changed from three ELECTED officials to three APPOINTED

---

**8.** Another exception recognized by some courts is that accusations of criminal activity, although in the form of an opinion, are not constitutionally protected. *Gregory v. McDonnell Douglas Corp.*, 17 Cal.3d 596, 604, 131 Cal. Rptr. 641, 645, 552 P.2d 425, 430 (1976); *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 397 N.Y.S.2d 943, 366 N.E.2d 1299, 1307 (1976).

**9.** In *Kapiloff v. Dunn*, 27 Md.App. 514, 343 A.2d 251, 263 (1975) *cert. denied* 426 U.S. 907, 96 S.Ct. 2228, 48 L.Ed.2d 832 (1976) the court held that opinions based on false facts may be actionable even though the underlying facts were set forth in the article, if the defendant had knowledge of the falsity or probable falsity of the underlying facts. *Accord, Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d. Cir. 1977) *cert. denied* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977). This position followed Restatement of Torts § 606 (1938) which was deleted from the Restatement Second. The Second Restatement was published after *Gertz*, and specifically interpreted *Gertz* in formulating its rule.

The Restatement interprets *Gertz* as affording a privilege to allegedly libelous opinions expressed as to private individuals by private individuals in private communications. We reject this interpretation.

officials. In at least one instance, an elected official left the post because of threats against his family and acts of vandalism on his home. Not one man of the three now on the board was put there by the voters.

In that same time frame this non-elected board has fired the chief, disposed of the district's attorney and accountants, hired Don Anton as a lawyer and decided to "merge" with three north county fire districts: Wellson [sic], Moline and Pattonville-Bridgeton Terrace.

Further, this new quasi-corporate setup apparently will take even more power away from the people of Affton. No longer will they have their own chief, accountable to residents (via an elected board), but a subchief who will be accountable to Chief Vernon Kelly, a cohort of Richard Walker, the self-serving head of Local 398 of the International Association of Fire Fighters.

It is more than mere irony that former Affton Chief Lester Westbrock was given an "early retirement" by the new board because he was pushed out under the district's mandatory retirement age of 60. The new "chief"-to-be, Kelly, has already retired from the Berkeley Fire Department because he is over 65, Berkeley's mandatory retirement age.

To add insult to injury, this entire "coup" apparently was accomplished illegally. The non-elected "board" has held three unannounced, secret meetings—May 28, June 5 and June 12—in apparent direct violation of the state's open meetings statutes. Furthermore, the current board chairman, Wayne Forward, is holding the minutes to these meetings at his home which violates that same Sunshine Law because 1) records must be kept in the district office and 2) they must be available to the district residents and to the press. Forward has made himself "unavailable" for almost a week and the records in his house have been equally unavailable.

However, the Sunshine Law is not without its flaws. Though board decisions may have been made illegally under that section of state statutes, those decisions still bear the weight of law. Simply stated, Affton is stuck with the new organization for the moment.

This *sleazy sleight-of-hand has been the work of Don Anton* with an obvious push from Richard Walker. Both men, along with members of the three north county fire district boards, attended the infamous June 12 secret meeting where the merger was consummated.

Does Affton want Walker calling the shots? The union international just suspended Local 398 for non-payment of dues. Before that, Hazelwood and University City were struck illegally by Walker's charges. During the U. City strike, cooperating districts were threatened and badgered if they attempted to help extinguish fires in that city. And in a number of districts—Affton included—where the union local has been involved in disputes, board members have faced threats and acts of vandalism. Is this what Affton voters are looking for?

If the reorganization maneuver is above board, why all the secrecy? Why are news organizations and residents forced to use *extraordinary means to find out about a major departmental reshaping?* Why is Wayne Forward suddenly "unavailable" and what are he and Anton hiding?

The Journal already has begun initiating an injunction to obtain the minutes of the secret meeting stored in Forward's house. We feel it's time the Grand Jury begin looking into the Affton situation to find out answers for the people in the district who have been unable to come up with those answers from their employees.

The entire plan is an obvious  .  .  .

### APPENDIX B

As the incredible events of late May and early June continue to unfold in the Affton Fire Protection District, *it becomes abundantly obvious the administration "coup" has been carefully orchestrated by Richard Walker, president of the discredited Local 398 of the International Association of Firefighters, and his henchman, attorney Don Anton.*

The modus operandi in the Affton case follows the pattern that has been established wherever his local—which has been suspended by the international for non-payment of dues—has attempted to subvert the will of the electorate.

Walker wants the entire county to consolidate fire services under one umbrella administration. He and his spokesman say such a procedure would improve fire services. His actual goal, however, is power. Should a unified county fire service become a reality, chances for his union gaining control are significantly increased. Imagine how easily he could bring the county to its knees, if he so desired, were he able to call an illegal county-wide firemen's strike such as those that have occurred in 398 districts in University City and Hazelwood.

He has been unable to approach his goal, however, with mere organization of the firemen. His new tact, therefore, has been to gain control of fire district boards of directors and move them toward consolidation. Three north county districts have so-far succumbed Wellston, Moline and Pattonville-Bridgeton Terrace. His first "success" in the south is Affton.

Elected members of the Affton FPD board have all resigned, tired and justly afraid of the threats, harassment and intimidation tactics they had to face in office. In their place, three appointed directors have been mere pawns of the Walker-Anton diumvirate.

They have rubber-stamped moves to remove the fire chief, the district attorney (who still has a contract with the district) and the accounts, replacing them with an administrative consolidation agreement with the three north county districts. The maneuvering which led to this nightmarish agreement has sent shock waves through the Affton district. *Residents there are now telling Walker, Anton and their bunch they want no part of these sleazy dealings.*

Wayne Forward, who has been largely responsible as board chairman for following Anton's lead, resigned last week because of the pressure he has felt from his "constituency" in Affton. At this point, the two remaining board members are also uncertain whether they will continue to take the heat for the sake of Anton's desires.

The Affton Chamber of Commerce has called a meeting for Thursday, July 13, at 7:30 p. m. in the Affton Senior High School Cafeteria, 8309 Mackenzie Road, to let the men who have been involved in this month-long drama explain exactly what has happened in the district and why.

As governmental units, fire districts belong to the residents who fund them. They are no place for private dealings, secret meetings, questionable business practices and decisions from those who are not responsible or responsible to the voters. Affton residents stand up for your rights and continue to tell the men now serving on your board YOU want to call the shots—not Don Anton and Richard Walker.

Attend next Thursday's meeting. Find out why these decisions have been made by unelected officials and how they can be changed. Your actions can stand to put Walker and Anton on notice that their tactics are not appreciated in South County—and they will not be accepted.