**Emil C. IVERSON, Plaintiff-Respondent,**

v.

**R. T. CROW, Defendant-Appellant.**

No. 45032.

Missouri Court of Appeals,
Eastern District,
Division One.

July 6, 1982.

Motion for Rehearing and/or Transfer Denied Sept. 17, 1982.

Application to Transfer Denied Oct. 18, 1982.

Niedner, Moerschel, Ahlheim, Bodeux & Lockett, Norman C. Steimel, St. Charles, for defendant-appellant.

Cundiff, Turken, Londoff & Drakesmith, Frederick W. Drakesmith, St. Charles,

Bruce M. Wurmser, St. Louis, for plaintiff-respondent.

CRANDALL, Judge.

■ Appellant filed a counterclaim for libel based on the following statement that was written and published by respondent: "The original developer of Lake Saint Louis, R. T. Crow, continues to cloud the facts with half-truths, innuendo, distortion, and misrepresentation."[1] On motion of respondent, the counterclaim was dismissed with prejudice for failure to state a cause of action upon which relief can be granted.[2] The order of the trial court was designated as final pursuant to Rule 81.06. This appeal ensues. We affirm.

■ The dispositive issue raised on appeal is whether the statements complained of are constitutionally protected "opinions" and therefore absolutely privileged under the first amendment of the United States Constitution. If a defendant bases his expression of a derogatory opinion of the plaintiff on his own statement of false and defamatory facts, he is subject to liability for the factual statement but not for the expression of opinion. *Restatement (Second) of Torts* § 566 illustration 5(1) (1976). *Anton v. St. Louis Suburban Newspapers, Inc.,* 598 S.W.2d 493, 498–99 (Mo. App.1980). These opinions are, even if falsely and insincerely held, constitutionally privileged if the facts supporting them are set forth. 598 S.W.2d at 499. The rationale underlying this rule of law is that where the facts underlying the opinion are set forth in the article, the opinion is afforded privilege because each reader may draw his own conclusion to support or challenge the opinion. *Id.* Liability can be imposed only if the expression of opinion creates the reasonable inference of undisclosed defamatory facts as the basis for the opinion. *Id.*

---

1. The news article upon which appellant based his counterclaim is set forth in the Appendix.

2. Respondent's memorandum in support of his motion to dismiss appellant's counterclaim asserted various grounds for dismissal. The trial court sustained the motion without specifying the ground upon which it was dismissing. On appeal, we must affirm the trial court's order if any of the grounds asserted for dismissal are valid. *Butler v. Circulus, Inc.,* 557 S.W.2d 469, 471 (Mo.App.1977).

In this case, appellant does not challenge the facts stated in respondent's news article, but argues that the facts do not support the stated opinions, thus becoming a defamatory statement of opinions without facts. We disagree. Respondent does state facts upon which he bases his opinion that appellant "continues to cloud the facts with half-truths, innuendo, distortion, and misrepresentations." While not a model of syllogistical reasoning, respondent's expression of opinion is constitutionally privileged. Whether the opinion expressed by the author is justified by the facts stated is for the reader of the news article to decide.

Viewing the pleadings in a light most favorable to appellant together with all reasonable inferences therefrom, we hold that the trial court properly sustained respondent's motion to dismiss because the opinions expressed were constitutionally privileged.

Judgment affirmed.

STEWART, P.J., and STEPHAN, J., concur.

## APPENDIX

### NEWSLETTER MAY 1979

### LAKE ST. LOUIS

### COMMUNITY ASSOCIATION

### FROM THE PRESIDENT

### WHO IS GOING TO PAY?

This is the finest hour for the City of Lake Saint Louis, the Community Association, and the people. Great progress is being made in several areas and we are fast moving ahead toward our collective goal of becoming the finest community in Missouri.

There are, however, several important issues remaining to be settled. Please recognize that we are dealing with these issues in the interest of all people of Lake Saint Louis.

The original developer of Lake Saint Louis, R. T. Crow, continues to cloud the facts with half-truths, innuendo, distortion, and misrepresentation. This column, to appear in the monthly CA NEWSLETTER, will deal with specific issues that are vital to the continued growth and prosperity of the LSL property owners.

Your elected officials and CA leaders are in a position to present solid facts and will do so in a manner clearly understood by the membership.

In addition, the Community Association will strive to keep you informed with special information nights, neighborhood meetings, and other means. We want you to understand the specific issues that so critically affect us all.

Now let's get down to our first topic.

St. Charles County has apparently "settled" a number of bond disputes involving uncompleted work in the Lake Saint Louis community—but were those issues settled to the advantage of R. T. Crow and Safeco or to the benefit of the people of Lake Saint Louis?

The County required assurance bonds to the tune of $1.2 million from Crow companies during the construction of several subdivisions to guarantee that necessary improvements would be completed. This was done prior to the incorporation of the City.

In other words, the County required that Crow provide some sort of guarantee of completion for the improvements in the case of his default. He did this by purchasing assurance bonds from Safeco General Insurance Co. Safeco was to pay for the work should Crow be unable to do so (which eventually proved to be the case).

April 19 the administrative County Court "settled" for $85,000 from Crow and $85,000 from Safeco and "releases the said parties of any and all liabilities." This amounts to $170,000 by anyone's arithmetic. With an estimated $500,000 in uncompleted work in the community will the County, above other responsibilities, channel its funds to Lake Saint Louis to cover work promised by Crow?

The City's interest is protected on the face of the original bond which stipulates, "Whereas, this bond shall be construed to

cover the interest of any municipality in the County of St. Charles whether the property involved is now or shall at any time be included within any municipality and shall be available for the protection of any municipalities, and any resident thereof, and any resident of St. Charles County."

In the agreement signed between the County, Crow and Safeco, County officials claim to have settled only those bonds in which the County was named obligee. But a dispute over the wording of the agreement leaves a question of whether or not the County relieved Crow of *all* his financial responsibility, including Crow to Crow bonds (a second set of bonds in which Crow contracted with another of his many companies).

The County Court signed an agreement for an amount of money which we feel is insufficient to cover the work they are already obligated to do. Should they be held liable for a total of half a million dollars worth of improvements (letting Crow off the hook at the same time), will they sink funds not available (the County is already in serious fiscal trouble)? Or will they simply do $170,000 worth or [sic] work and let it drop there? What will be left undone?

Crow filed Chapter 11 proceedings in Federal Bankruptcy Court in 1974 and claims to have absolved himself of any financial responsibility. However, during the bankruptcy proceedings he failed to list his indebtedness to Safeco. If he did not list his insurance indebtedness how could he be relieved of financial responsibility through bankruptcy?

A trail of broken promises to the Lake Saint Louis community follows in the wake of Crow, and the community is now sueing [sic] for defalcation. He is past due on over $30,000 worth of assessments, to the community's detriment, and has sold promised common property. How can one man sell what belongs to the multitude?

Crow is also in the process of platting new areas, including the promised remainder of the PGA golf course. If he has sufficient resources to plat these areas, where is the money to complete the work promised over the past several years?

When this issue is boiled down to its essence, there remains one question you should ask yourself. Are you willing to pay to let Crow off the hook? The unfinished work *is* going to be completed. If Crow is not held responsible for his obligations and if the County does not have the money to cover the work it must do, the City and CA will have to move ahead with the improvements. And your taxes and assessments will have to be raised to finance it.

Think about it.

The following locations are included among the unfinished improvements in the bond controversy between the City of Lake Saint Louis, the Community Association and R. T. Crow:

1. Freymuth Road
2. Wildwood I–V
   Patio Green
   Patio Cove I–III
3. Lake Saint Louis Blvd.
4. Woodfield
5. Oak Hill
6. Dauphine I and II
7. Bridlespur
8. Fox Trails III
9. Lakewood I–V

If you are aware of any improvements, such as the guard rails on the dam on Lake Saint Louis Blvd., the unsafe entrance of the Lakewood area, the storm drains at Oak Hill, or the washing out of Fox Hunt Drive in the above areas, contact the CA office, 625–8276, 441–5183.